**Howard C. GOOD, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 26082**

**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

April 24, 1969.

Rehearing Aug. 28, 1969.

Clyde W. Woody, Marian S. Rosen, Woody & Rosen, Houston, Tex., for appellant.

Morton L. Susman, U. S. Atty., James R. Gough, Asst. U. S. Atty., Homero M. Lopez, Carl Walker, Jr., Asst. U. S. Attys., Houston, Tex., for appellee.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Howard Good was convicted by a jury on all four counts of a narcotics indictment. The first count charged him with unlawfully conspiring to import a single package of 533 grams of heroin in violation of 21 U.S.C. § 174; the second and third counts charged substantive violations of the same statute. The fourth, a tax count relating to the same lot of heroin, came under 26 U.S.C. § 4704. The relevant facts, in the light most favorable to the Government, can be stated briefly. Howard Good was seen going across the border from Roma, Texas to Miguel Aleman, Mexico on November 4, 1967 and was seen during the

day with people later identified as Mexican smugglers. He returned from Mexico the same day. On November 6 and 7, customs inspectors received information that a large quantity of heroin was going to be smuggled across the border into Roma by Mexican smugglers. On the evening of November 7, the officers saw a man named Hershel Nutt take a package from an unidentified man at a cemetery known to be a customary delivery point for the Mexican smugglers. Later, Nutt was arrested and the heroin was found in his car. He decided to co-operate by driving with the officers to Houston and placing a call to Howard Good. In about fifteen minutes, Good drove his car in the vicinity of Nutt's car but elected not to make contact. Nutt's testimony indicated that Good did most of the planning for the smuggling of the heroin across the border and for the transfer from the smuggler to Nutt on the American side. Nutt said he was to have made delivery to Good in Houston.

 Having studied the briefs and voluminous record, we have concluded that none of appellant's eight points of error requires reversal.[1] First, he urged that his privilege against self-incrimination was violated as a result of his being required by 18 U.S.C. § 1407 to register at the U. S.-Mexican border as a person previously convicted of a narcotics violation. An examination of the record discloses that the trial judge excised every reference in the indictment to the fact that appellant registered at the border on November 4, 1967 and that no testimony was allowed before the jury to show that he complied with the statute. As the court observed in denying the motion for judgment of acquittal, the fact that appellant entered Mexico from Roma, Texas was "proved by independent witnesses who saw him enter and leave, and no mention was made of his registering." Furthermore, appellant was not charged with any crime for registering and crossing the border. Similar attacks on the constitutionality of 18 U.S.C. § 1407 have been rejected by this Court, Palma v. United States, 5th Cir. 1958, 261 F.2d 93, and other courts, Allen v. Meier, 9th Cir. 1967, 374 F.2d 447; Reyes v. United States, 9th Cir. 1958, 258 F.2d 774; United States v. Eramdjian, S.D.Calif.1957, 155 F.Supp. 914. We reaffirm our decision in Palma.

 Also in the first point of error, appellant attacks his conviction under 26 U.S.C. § 4704 for purchasing heroin not in the original stamped package or from the original stamped package, saying that the tax statute is unconstitutional because compliance therewith would require a person to incriminate himself. The statute under attack is similar to the marijuana tax statute, 26 U.S.C. § 4744, which we have previously upheld as against fifth-amendment challenges which were based on Supreme Court decisions in *Marchetti* and *Grosso*, the gambling tax cases. *See, e. g.,* Thompson v. United States, 5th Cir. 1968, 403 F.2d 209; Leary v. United States, 5th Cir. 1968, 392 F.2d 220 (cert. granted). Our decisions holding that the marijuana statute is not vulnerable to an assertion of the privilege against self-incrimination foreclose appellant's contention as to the heroin tax statute.

 In his second point, appellant insists that the court erred in admitting out-of-court declarations by Hershel Nutt, a co-conspirator, made after Nutt's arrest and not in furtherance of the conspiracy. This hearsay argument is totally devoid of merit since Nutt testified at the trial for the Government and was vigorously cross-examined by the defense. In making this argument, appel-

---

1. Under Rule 18 the Court has placed this case on the summary calendar for disposition without oral argument. See Murphy v. Houma Well Service, 5th Cir. 1969, 409 F.2d 804, Part I.

lant refers to the testimony of a customs inspector as to what happened after Nutt's arrest. A study of the record discloses that this testimony related to Nutt's actions rather than his declarations. Moreover, to the extent that out-of-court declarations by a co-conspirator were involved, they did not relate to Appellant Howard Good.

■ Next, it is argued that appellant's privilege against self-incrimination was abridged when he gave his home address to the officers. He says that this information was material because it enabled the officers to run down certain telephone calls to and from the address. The record shows that after an adequate *Miranda* warning had been given, appellant furnished officers with his home address and asked that his automobile be taken there and that his father be instructed to call a lawyer. Good was allowed to drive his car to his home and once there he requested his father to call a lawyer. The home address was furnished voluntarily after an adequate warning had been given and was not incriminating. There was no error.

■ In his fourth point, appellant complains of prejudice resulting from the testimony of a co-defendant who had pled guilty to the narcotics charges and was permitted to testify before he had been sentenced. Certainly Nutt's testimony hurt Good's case, but in cross-examining Nutt, counsel for appellant thoroughly acquainted the jury with the facts surrounding Nutt's testimony, the opportunity for coercion, and the likelihood of Nutt's having something to gain by cooperating with the Government. The trial judge appropriately instructed the jury to exercise caution in assessing Nutt's credibility. Under these circumstances, there is no basis for finding reversible error.

■ Appellant complains next of the district court's sentencing procedure. During allocution, counsel moved for suppression of the presentence report or, in the alternative, for production of the report and inspection by defendant. Both motions were denied. Rule 32(c) (2) of the Federal Rules of Criminal Procedure provides that "the court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation." Thus, while disclosure is permissible and often desirable, it is ultimately a matter vested within the sound discretion of the trial judge. Baker v. United States, 4th Cir. 1968, 388 F.2d 931; United States v. Weiner, 3d Cir. 1967, 376 F.2d 42.

■ Also appellant complains that the court sentenced him to fifteen years as a second offender without complying with the procedure for second offenders outlined in 26 U.S.C. § 7237(c). The statute provides that if a person convicted under 21 U.S.C. § 174 is a second or subsequent offender, the United States Attorney shall file an information setting forth that the offender has a prior conviction. The offender then has the right to affirm or deny in open court that he is identical with the person previously convicted. If he denies the identity, sentencing shall be postponed for such time as to permit a trial by jury on the issue of the offender's identity with the person previously convicted. While appellant urges that this statutory procedure was not followed, the record discloses that during allocution the trial judge asked him whether he had been previously convicted and given ten years and he said he had. Then, counsel asked the court to consider that Good's ten-year sentence as a first offender was "a rather extreme sentence as a first offender." The court in turn asked counsel if he did not "understand that under Counts 1, 2 and 3, a second offender, this man, the least I can give him is a 10-year mandatory sentence." Counsel replied that he did so understand. Appellant having unequivocally affirmed

his identity with the person previously convicted, we find that there was substantial compliance with 26 U.S.C. § 7237 (c).[2]

In his sixth point, appellant attacks the trial court's charge as being inadequate and vague. But a careful reading of the entire charge convinces us that the trial judge clearly set forth the law applicable to conspiracy and to the substantive violations. Appellant's most specific objection, as we understand it, is to the inclusion in the charge of the statutory presumption arising from actual or constructive possession of narcotics (21 U.S.C. § 174). The statute provides in effect that when a defendant is shown to have had actual or constructive possession of narcotics, such possession creates a presumption, rebuttable by defendant's satisfactory explanation, that defendant knowingly received, concealed or facilitated the transportation, sale or concealment of narcotics, *knowing the narcotics to have been unlawfully imported.* While the trial judge did mention this statutory presumption, he went on to say that Nutt was the one with actual possession of the narcotics and that his knowledge of the unlawful importation could not be imputed to Good or Gamez, the other co-defendant, "unless they, themselves, knew of the unlawful importation". The court elaborated:

> The government seems to think that they have been able to prove that to us, because Nutt said that he came down here because Good told him to come down, and that Good knew that— gave him the phone where to call, and that they knew that this narcotic was going to come in from across the river, and that Gamez was in on the know. If that's the case, then they knowingly

knew these narcotics would come over illegally. But if they didn't know it and you don't believe what Hershel Q. Nutt said, or you have any reasonable doubts thereof, well, then the fact that Hershel Nutt knew they came from across the river is not imputed to Good and it is not imputed to Gamez, and you must say, by your verdict, not guilty * * *

Thus, the jury was admonished that Nutt's possession would not convict Good and that Good could not be convicted unless he had personal knowledge of the unlawful importation. He was not prejudiced by the reference to the presumption that knowledge of illegal importation arises from possession.[3]

Seventh, appellant argues that the court erred in submitting the fourth count, which charged him with an unlawful purchase of narcotics not in or from the original stamped package, because that count was inconsistent with the smuggling counts, which charged him with the unlawful importation of narcotics. This contention is based on Marquez-Anaya v. United States, 5th Cir. 1963, 319 F.2d 610 and Thomas v. United States, 5th Cir. 1963, 314 F.2d 936, cases in which we found inconsistency between smuggling counts and tax counts. In *Thomas*, the evidence indicated that the defendant obtained narcotics in Mexico and brought them across the border himself. There was no evidence to suggest any kind of transfer and hence no evidence to support the charge that the defendant made an unlawful purchase in the United States. In *Marquez-Anaya,* the four defendants met at the home of one of them in Mexico and arranged to smuggle marihuana across the border in a truck driven by an unidentified man

---

2. If appellant believes he has a serious basis for contending that he was sentenced illegally, he can avail himself of Rule 37 of the Criminal Rules, which provides that the court may reduce a sentence or correct an illegal sentence within 120 days after issuance of a mandate upon affirmance of the judgment, or after any order or judgment of the Supreme Court denying review of, or having the effect of upholding a judgment of conviction.

3. Appellant also objects to references in the charge to Diosdado, a codefendant, since the court directed a verdict of acquittal for Diosdado. We have examined the charge and found that the few references to Diosdado were perfectly harmless.

whom they had hired. The defendants went across in a different car and got the marihuana from the truck soon after crossing. Concluding that this was "substantially an uninterrupted movement into the United States of a single quantity of marihuana," 319 F.2d at 611, the Court held that there was no evidence to support the charge of an unlawful transfer in the United States. Though more than one car was used in *Marquez-Anaya* and the narcotics were transferred from one car to the other after crossing the border, the defendants in both cases obtained the narcotics in Mexico themselves, controlled the movement of the narcotics across the border, and remained in control after crossing. In both cases, there was "substantially an uninterrupted movement." We find the case at bar distinguishable on its facts. Appellant arranged for the smuggling and therefore aided and abetted it, but the actual smuggling was done by a Mexican known as "El Tuerto," who was employed by Mexican suppliers rather than by Good. At the cemetery in Roma, there was a physical transfer from one of the smugglers, probably "El Tuerto," to Nutt, who was Good's agent. Thus, while appellant was involved in both ends of the transaction, there nevertheless were two distinct groups of people, the Mexican smugglers at one end and the American transferees at the other. The transferees did not control the importation. Under these circumstances, it cannot be said that there was substantially an uninterrupted movement of the narcotics with no real transfer. Therefore, there was no inconsistency between the smuggling counts and the tax count.

▮ Finally, appellant objects to the introduction of a document at the trial which had not been produced in accordance with counsel's pretrial motion for discovery and the court's pretrial order. The document was a note signed by Good and Nutt for an amount due on one of the automobiles involved in the case. When Nutt was asked about the note on direct examination, appellant objected and the court, as provided by Rule 16 of the Criminal Rules, prohibited its introduction and instructed the jury to disregard any reference to it. Since there was other evidence to link Good and Nutt together in the transaction, the reference to the note was not prejudicial to Good and the instruction to the jury cured the error, if any.

Counsel for appellant has explored this case in great detail and called our attention to numerous aspects of it, but we see nothing that remotely approaches reversible error.

Affirmed.