**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Antonio Sepeda SALINAS, Defendant-Appellant.**

**No. 29258.**

United States Court of Appeals, Fifth Circuit.

March 5, 1971.

Rehearing Denied April 7, 1971.

A. Hardcastle, Jr., court appointed, Dallas, Tex., Geary, Brice, Barron & Stahl, Dallas, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Anthony J. P. Farris, U. S. Atty., Houston, Tex., for plaintiff-appellee; Ronald J. Blask, Atty., Dept. of Justice, Washington, D. C., of counsel.

Before JONES, BELL, and SIMPSON, Circuit Judges.

BELL, Circuit Judge:

This appeal is from a judgment of conviction entered on a jury verdict finding appellant guilty on two counts of an indictment charging him, respectively, with smuggling heroin hydrochloride into the United States and with unlawfully concealing and facilitating the transportation of the heroin, all in violation of 21 U.S.C.A. § 174. We affirm in part and vacate and remand in part.

Taking the view of the evidence most favorable to the government ,to support the verdict as is the rule, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, the following facts appear from the record. Appellant was indicted along with his brother and a friend. All three were addicted to heroin. The sequence of events leading up to the crime began in San Antonio. The three were drinking beer around the noon hour at an ice house when they decided to go to Laredo some two and one half hours away. It was appellant's idea although no definite reason appears for the trip. The trip was made in the brother's automobile with appellant to pay for the gas. About an hour after arriving in Laredo and while in a bar where they had been since arrival, appellant announced that he was going to Nuevo Laredo, Mexico—just across the border from Laredo to see an uncle. The other two participants refused to go because, as addicts, they would be required to register on crossing the border. See Title 18 U.S.C.A. § 1407. Appellant, who was required to register under § 1407 both as an addict and as a

previous narcotic laws violator, advised them, in effect, that he did not mind registering.

The testimony from this point forward becomes a swearing contest, with the brother on the side of the government and with Alderete, the friend, taking substantially the position of appellant. As background for this posture of affairs, it is well to have in mind that Alderete testified after the court had directed a verdict of acquittal as to him for lack of evidence. The brother had pleaded guilty to another count of the indictment before trial and was a government witness.

Alderete and the brother are in agreement on the fact that a half hour or so after appellant's departure for Mexico on foot, they decided to visit Nuevo Laredo in the brother's automobile. Alderete denied having seen appellant while in Mexico. The brother, on the other hand, testified that they met appellant in Nuevo Laredo where he was in possession of a brown ball of heroin and that the heroin was placed under the dash of the brother's automobile by appellant. The brother testified that they left for the international bridge and that appellant was let out of the vehicle some four blocks from the bridge so that he might cross on foot and register. He testified that they planned to meet at a specified point in Laredo some three blocks from the bridge after all had crossed. The brother and Alderete returned in their automobile without event.

On the return crossing, appellant was searched by customs agents at the bridge. The testimony of a customs agent was that he had numerous needle marks on his arm at the time and blood on his handkerchief with the inference being that the blood came from his arm. Appellant stated to the customs agent that he was going to meet his uncle at his home on a certain street in Laredo. The agents knew that there was no residential area on the street at the particular place stated. These facts coupled with the additional fact that appellant spent less than two hours in Mexico aroused the suspicion of the agents and they arranged to follow appellant.

Appellant then met his brother and Alderete about three blocks from the bridge. They were sitting on a park bench and he gave a signal as he walked by them and continued walking. They got into the brother's automobile and appellant joined them in the automobile about a block away. They were stopped by the customs agents after traveling only a short distance—in fact, at the very next traffic light. They were searched for weapons on the spot. The automobile was taken the few blocks back to a search facility at the bridge and searched. The heroin in question was found in a defroster hose under the dash of the automobile.

Turning now from the facts to the assignments of error, we will first dispose of those assignments which are without any merit whatever. The first of these is that the evidence was insufficient to support the verdict. The second has to do with claimed errors in the charge. The third is that appellant's conviction must be set aside on res judicata principles, i. e., the brother pleaded guilty to count three of the indictment which charged a purchase in violation of 26 U. S.C.A. § 4704. The argument is that the purchase necessarily took place in the United States and thus in some way barred the prosecution of appellant from smuggling, transportation and concealment. We are unable to perceive any basis for this attenuated argument inasmuch as there is no necessary conflict between what the brother admitted by his plea and the charges that remained against appellant.

This leaves three issues to be considered. The first is whether the heroin was properly admitted into evidence in the face of a motion to suppress. The second is whether appellant was deprived of his *Miranda* rights [1] through the admission of the statement regard-

---

1.  Miranda v. Arizona, 1966, 334 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

ing his uncle which was made at the time he was being questioned by customs agents upon his return crossing of the border. The third issue involves the assertion that it was improper for a customs agent to mention the border registration of appellant while testifying as to the events leading up to the search and seizure. These assignments of error will be discussed seriatim.

## I.

The motion to suppress rested on the theory that there was no probable cause for the search of the automobile; hence the seizure was improper. The district court concluded that the search fell into the border search category and that, as such, the search was justified by the facts. We agree.

Appellant places much stress on the fact that the customs officers had no knowledge that the automobile had crossed the border. We recently point out that proof of such a crossing is not a *sine qua non* of a border search in that persons and vehicles in and about the border may be searched in the border area if there is direct contact with or some reasonable relationship to the border area. United States v. Hill, 5 Cir., 1970, 430 F.2d 129.

■ Here there was ample nexus between the vehicle and the border. The suspicion which appellant's conduct aroused in the customs agents and the events that thereafter transpired led them to the vehicle. This was sufficient to establish a reasonable suspicion of possession of unlawfully imported merchandise and to justify the search. The vehicle was within a few blocks of the customs facility and it was not improper for the vehicle to be taken to the facility for the search. See also United States v. Tsoi Kwan Sang, 5 Cir., 1969, 416 F. 2d 306; Walker v. United States, 5 Cir.,

1968, 404 F.2d 900; Morales v. United States, 5 Cir., 1967, 378 F.2d 187; Thomas v. United States, 5 Cir., 1967, 372 F.2d 252.

## II.

The *Miranda* question presented depends on whether appellant was in custody within the meaning of that decision at the time he was interrogated at the border upon his return to this country. *Miranda* excludes on the scene questioning in the following language:

> "General on-the-scene questioning as to facts surrounding a claim or other general questioning of citizens in the fact-finding process is not affected by our holding." 384 U.S. at 477–478, 86 S.Ct. at 1629.

See also United States v. Robertson, 5 Cir., 1970, 425 F.2d 1386. Moreover, the *Miranda* rights apply only to custodial interrogation which is defined in *Miranda* as " * * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612.

Appellant was detained and searched pursuant to Title 19, U.S.C.A. § 1582 which arms customs agents with the power to search out and intercept contraband items and smugglers at the border.[2] Thousands of persons enter the country daily and are subject to some degree of detention while their luggage is searched and they are asked routine questions concerning citizenship, destination, whether they have items to declare, questions regarding contraband, and the like. To hold that questioning of these types or routine border searches of luggage place a person "in custody" within the meaning of *Miranda* would unduly distort that case. Chavez-Marti-

2. 19 U.S.C.A. § 1582 provides in pertinent part:
   " * * * all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government. * * *"

nez v. United States, 9 Cir., 1969, 407 F.2d 535; and see also United States v. Kurfess, 7 Cir., 1970, 426 F.2d 1017. However, when the border search or detention becomes more than routine, such as when a person is discovered to be concealing suspicious materials, or when a person is taken to a private room and strip searched as here, a different outcome obtains. United States v. De La Cruz, 7 Cir., 1970, 420 F.2d 1093; United States v. Berard, D.C.Mass., 1968, 281 F.Supp. 328.

■ The statement complained of here was the representation, introduced by the government in its case in chief, which appellant made to the customs agent concerning the location of his uncle's residence in Laredo and which statement aroused the suspicion of the agents. Cf. Harris v. New York, 1971, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1. This statement was commented upon at length by the court in the charge to the jury and could in no way be deemed harmless. The difficulty of decision arises because the record does not reveal at what point in the border crossing procedure the statement was elicited from appellant. If made as a result of interrogation while he was in the strip search room, his freedom had been sufficiently restricted so as to place him "in custody" under *Miranda*. This is so because the questioning was under such circumstances as might compel appellant to speak where he would not otherwise do so. Miranda v. Arizona, supra, 384 U.S. at 467, 86 S.Ct. 1602. In order that this difficulty may be resolved, we vacate and remand with direction that a post-conviction hearing of the type delineated in Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, be held to determine this fact question. If the statement was made after appellant was taken to the search room, appellant will be entitled to a new trial; otherwise the conviction will stand affirmed.

### III.

The last question presented has to do with the admission of the following testimony by a customs agent which testimony was elicited by counsel for the government as a part of the government's proof:

"Q. Where did you first see Mr. Sepeda?

A. In the baggage room at the international bridge.

Q. What first called your attention to him?

A. He was sitting on the bench, had a form in his hand to register back into the United States. As I was walking through the baggage room, I stopped and talked to him.

\*    \*    \*    \*    \*    \*

Q. During the course of your investigation, did you inquire as to how long Mr. Sepeda had been in the Republic of Mexico?

A. Yes, I did. I noted on the form which he had, the registration form for narcotic violators, that he had left the United States at 3:45 in the afternoon, which would make it less than two hours in the Republic of Mexico."

Appellant urges that admission of this evidence was erroneous for the reason that it indicated guilt of a crime not charged in the indictment, and also as being violative of his Fifth Amendment right against self-incrimination if otherwise admissible.

In Good v. United States, 5 Cir., 1969, 410 F.2d 1217, we held that the registration statute in question, § 1407, was not violative of the Fifth Amendment in its requirements aspect. We noted, however, that no testimony was allowed before the jury to show compliance with the statute. 410 F.2d at 1220. Here

the testimony was admitted without the objection and no cautionary instruction was sought or given.

 We pretermit discussion of any constitutional aspect of the question presented or as to whether the testimony was admissible in the first instance to show motive or plan because we conclude that the error, if any, was harmless beyond a reasonable doubt. Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

The only mention of the registration by the government was in the instances referred to above. The first was completely harmless since no reference was made to narcotics. As to the second, appellant introduced similar testimony through his witness, Alderete. Appellant also testified to his previous narcotic violations and it will not do to say that he would not have testified except for the testimony here complained of when the severity of the disclosures regarding his prior criminal record over and above narcotics are considered. His prime purpose in testifying was to deny his connection with the heroin and to buttress Alderete's testimony which tended to place.the blame on appellant's brother.

 The testimony here in question was miniscule in light of appellant's testimony and that of Alderete and we cannot hold, in the absence of objection, that the admission of this testimony arose to the level of plain error. On the other hand, we do not hold that appellant's trial counsel, now said to be inadequate by appellate counsel, was inadequate in having failed to object to this passing reference to appellant's registration as a violator. The failure to object, on the record, easily passes as a trial tactic.

Affirmed in part; vacated and remanded in part for further proceedings not inconsistent herewith.