UNITED STATES of America,
Plaintiff-Appellee,

v.

Deborah Ann McCAIN,
Defendant-Appellant..

No. 76–2628.

United States Court of Appeals,
Fifth Circuit.

July 20, 1977.

Theodore J. Sakowitz, Federal Public Defender, Michael Doddo, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Barbara D. Schwartz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

Deborah Ann McCain was convicted, following a non-jury trial, of importation of 178 grams of cocaine and possession with intent to distribute cocaine.[1] The only issue the defendant raises on appeal is whether the trial court erred in refusing to suppress a statement she made and the physical evidence obtained therefrom, because they were obtained in violation of the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We agree with the defendant's contention, and, therefore, reverse.

I

The defendant, Deborah Ann McCain, flew into Miami International Airport on January 27, 1976 from Colombia. Upon deplaning, she proceeded to Customs and presented herself and her luggage to Customs Inspector Rollins. Rollins noticed that she appeared very nervous and that her voice cracked. The defendant was wearing tight fitting clothes which revealed a bulge in her abdominal area. Further, the defendant was a young, single female traveling alone, and her duration of stay in Colombia was short. These characteristics are traits which customs inspectors have found to be indicative of drug smugglers. Based upon these indicia, Rollins believed a secondary search was warranted. Rollins informed his supervisor, Inspector Korzeniowski, of the circumstances and Korzeniowski concurred. The defendant was taken to the secondary search room where two female customs inspectors conducted a strip search. This search produced no incriminating evidence. Upon being informed of the unproductive search, Agent Korzeniowski entered the secondary search room and handed the defendant a booklet made up of newspaper clippings reflecting a number of tragedies which had occurred when people had attempted to hide narcotics in their body cavities.[2] After reading this booklet, the defendant's bags were removed to a customs enclosure where Inspector Rollins re-inspected the luggage. The defendant was taken into the supervisor's office, and Inspector Korzeniowski talked to the defendant for some seven or eight minutes while her luggage was being searched. Korzeniowski testified, and the trial court found in its findings of facts, that the inspector talked to the defendant as "a father might talk to a daughter, and he told her that these were very serious matters, that she could harm herself seriously, perhaps even cause her death, if she was in fact carrying contraband in her body and if any of these containers ruptured and this narcotic substance was in immediate contact with her body or her internal organs". (T 116). Following this, Agent Korzeniowski testified that the defendant turned white, hung her head down and blurted out that, "Yes, I do have narcotics in my body." (T 71). The defendant was then allowed to remove the narcotics from her body. After removing the cocaine, the defendant was placed under arrest and for the first time advised of her rights.

II

Ms. McCain argues that the trial court erred in denying her motion to suppress her admission that she had cocaine on her body, and the physical evidence that was obtained as a result of that admission. The defendant's argument rests solely on the fact that the customs officers failed to advise the defendant of her *Miranda* rights until after the statements and evidence were obtained.

---

1. In violation of 21 U.S.C. §§ 841(a)(1), 952(a), and 960(a)(1).

2. The psychological intent of this collection of news stories, although consistent with the duties of customs officers, is obvious. Interrogation can take many forms. This is one of the most effective.

■ *Miranda* declared that warnings are required whenever the person being interrogated is in custody or otherwise deprived of his or her freedom of action in any significant way. This Court uses a case by case approach in determining whether there has occurred a custodial investigation. *United States v. Montos*, 421 F.2d 215 (5th Cir. 1970); *cert. denied* 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532. This determination is often a difficult one, and this is especially true in border control situations since it is totally impractical to provide every person who crosses the border the right to a lawyer, etc., before asking that person routine questions.[3]

This Court has previously examined border situations which were held to be sufficiently custodial so as to require *Miranda* warnings. In *United States v. Salinas*, 439 F.2d 376 (5 Cir. 1971) we explained that pursuant to 19 U.S.C. § 1582, customs agents are given the power to search out and intercept contraband items and smugglers at the border. Thousands of persons enter the country daily and are subject to some degree of detention while their luggage is searched, and they are asked routine questions concerning citizenship, destination, whether they have items to declare, questions regarding contraband and the like. As to these types of situations we held that it would utterly distort *Miranda* if these circumstances would place a person "in custody" for *Miranda* purposes. However, we further explained that when the border search or detention becomes more than routine, such as when a person is discovered to be concealing suspicious materials, or *"when a person is taken to a private room and strip searched as here, a different outcome obtains."* 439 F.2d at 380.

In *United States v. Garcia*, 496 F.2d 670 (5th Cir. 1974), *rehearing denied*, 5th Cir., 502 F.2d 1168, *cert. denied* 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436, *rehearing denied*

420 U.S. 1009, 95 S.Ct. 1455, 43 L.Ed.2d 768, we reaffirmed our holding in *Salinas* and stated:

> It is obvious that the government activity revealed here was more than "routine". Mrs. Garcia was subject to a complete strip search and detained for at least an hour. . . . Under the *Salinas* standard, she was subjected to a custodial interrogation . . .

*Id.* at 672.

■ There is no doubt that during the strip search Ms. McCain was "in custody" for *Miranda* purposes. This situation, however, has an added twist. Since the statement which was allegedly obtained in violation of *Miranda* was made after the strip search, it is necessary to determine whether the defendant was still in custody at the time the statement was made. From the facts presented, we hold that Ms. McCain was still in custody. Inspector Korzeniowski testified that after the strip search he took Ms. McCain into the supervisor's room and talked to her while her luggage was being reexamined. While we recognize that Inspector Korzeniowski's motives were beyond reproach, it is nevertheless true that it was during this seven or eight minute period that Ms. McCain admitted she was carrying cocaine. The government offered no testimony to the effect that Ms. McCain was free to leave after the initial strip search. In fact, all the evidence is to the contrary. However, if we were to assume Ms. McCain was not being physically restrained from leaving after the strip search, she was obviously able to leave only if she was willing to abandon her luggage, and this itself is a sufficient restriction on one's freedom of action so as to trigger the giving of *Miranda* warnings before proceeding with any interrogation.

■ The Government argues in the alternative that even if the defendant was in

---

**3.** We feel that it is important to note that our holding is limited to the facts of this case and those like it involving secondary or strip searches conducted in private rooms and accompanied by interrogation. Nothing contained herein alters in any way the law relating to "routine border inspections" accompanied by the usual questions regarding citizenship, length of time outside the country, etc., conducted at airport inspection lines, border crossings and permanent and fixed border checkpoints.

custody, the statement made by her was voluntary and not in response to any investigation or interrogation, and consequently, *Miranda* warnings were not required. We do not agree. The whole purpose of the talk given to the defendant was to persuade the defendant to confess. This conversation was not unlike the now famous interrogation of Mr. Williams in *Brewer v. Williams*, —— U.S. ——, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Mr. Justice Stewart, writing for the majority of the Court, condemned that effort by the government to elicit information when he stated:

> There can be no serious doubt, either, that Detective Leaming deliberately and designedly set out to elicit information from Williams just as surely as—and perhaps more effectively than—if he had formally interrogated him.

*Id.* at ——, 97 S.Ct. at 1239.[4] We feel that the motive of the government in this case was similar—that is, Inspector Korzeniowski "deliberately" and "designedly" set out to elicit from Ms. McCain her admission that she had narcotics within her body. The fact that the inspector was acting out of concern for the defendant's well-being does not eliminate the requirements of *Miranda*. We hold, therefore, that the defendant was in custody at the time she made her admission, and that this admission was made in response to the investigatorial or inquisitorial efforts of the government. The defendant should have been advised of her *Miranda* rights prior to soliciting her admission that she had narcotics within her body, and the failure of the government to do so requires reversal.

Reversed and remanded for dismissal.

GEE, Circuit Judge (dissenting):

This is a very close case, and the result which the majority reaches in one with which I am not in very vigorous disagreement. All the same, I have been unable to persuade myself to concur and so must voice a brief dissent. The holding of the court is that Ms. McCain should have received *Miranda* warnings before she was interrogated while in custody.

I doubt she was interrogated by Agent Korzeniowski. She was rather warned—granted in a manner most frightening—of the risk she was running by carrying drugs internally. But the warning called for no response, and she knew when she received it that she had nothing more to fear from a strip search: she had already passed one. And though the response she made was certainly one not entirely unlikely, it seems to me that a more likely one was that she, having successfully braved the inspection so far, would simply depart and heed Korzeniowski's warning by ridding herself of the contraband as speedily and as carefully as she could.

As I have said, the question is close, but I entertain grave doubts about extending *Brewer v. Williams, supra*, a Sixth Amendment case, to this Fifth Amendment problem. My reading of that opinion inclines me to believe that its center of gravity rests on breach of the promise to counsel that his client would not be tampered with in his absence. There was, of course, nothing of that kind done here. Once we begin to equate warnings and environments with interrogation, I fear we have unnecessarily opened another Pandora's Box of case-by-case evaluations.[1] This I am loath to do without some indication from the Court that *Brewer* transcends its Sixth Amendment context.

I also doubt McCain was in custody. Certainly the search of her person has been completed and she was not under formal

---

4. While we recognize that the majority opinion in *Brewer* expressly states that it does not deal with *Miranda* and the Fifth Amendment privilege against self-incrimination, we do feel that the opinion's language as to what is and what is not "interrogation" is on point.

1. Suppose, for example, the booklet of newspaper clippings had simply been lying on a table and had been idly picked up and perused by McCain and that thereafter Korzeniowski had precipitated her admission by merely remarking, "Pretty scary, eh? I hope you aren't doing anything like that." Interrogation? Sadly, the imaginable variations on these themes are legion.

arrest. She was merely waiting while her luggage was re-checked. Persons in such circumstances—waiting while their luggage is checked at the border—are not "in custody." And this is true even though, like McCain, they may well be arrested if contraband appears in their luggage. It is true she was in a private room, talking to the inspector. But so was Carl Mathiason [*Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)] and so was Bertha Barfield [*Barfield v. Alabama*, 552 F.2d 1114 (5th Cir. 1977) (1977)], and neither was held to have been in custody. Barfield, indeed, had been told she could not leave— as McCain was not. And though it is true McCain had just been subjected to the repellant indignity of a strip-search, that was over and, distasteful as such procedures are, it is precisely such behavior as McCain's that necessitates them.

As I have said, the case is close. But I would affirm, and since the majority does not, I respectfully dissent.