787 F.2d 593
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
EDWARD DIXON, Defendant-Appellant.
 85-1022
 United States Court of Appeals, Sixth Circuit.
 3/20/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: CONTIE and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appeals his jury conviction of possession of a firearm by a felon in violation of 18 U.S.C. App. Sec. 1202(a)(1). On appeal defendant makes three arguments. First, defendant asserts that the district court erred in denying his motion to suppress the statements made to an ATF agent. Second, defendant argues that the district court erred in denying his motion for bond pending appeal. Third, defendant points out that the weapons which he possessed were manufactured prior to the enactment of 18 U.S.C. App. Sec. 1202. From this defendant argues that there was no evidence that the guns which he possessed affected interstate commerce after the effective date of the statute. For the reasons that follow, we affirm.
 
 I.
 
 2
 After receiving information that an Edward Dixon, a resident of Inkster, Michigan, was a convicted felon possessing firearms, Special Agent Rodney Tureaud, Jr., of the Bureau of Alcohol, Tobacco and Firearms ('ATF') checked the criminal record files of the Michigan State Police. The record check revealed that an Edward Dixon was a felon. On April 14, 1981, Agent Tureaud, accompanied by Detective Ira Parker, of the City of Inkster Police Department, visited defendant's residence in an attempt to determine if the Edward Dixon believed to be possessing firearms was the same Edward Dixon who had been convicted of a felony.
 
 
 3
 Once at defendant's residence, Detective Parker identified himself as a police officer. Although defendant refused the officers' request to come in, he agreed to come out and talk with them. Once outside, defendant accompanied the officers to Agent Tureaud's unmarked government car where Detective Parker requested defendant's driver's license for informational purposes. While Detective Parker was running a routine check over his radio, Agent Tureaud told defendant that he 'had reason to believe that [defendant] was a convicted felon illegally in possession of some firearms. And then [Agent Tureaud] asked [defendant] if he ever spent time in prison.' App. at 42. Defendant responded that he was a convicted felon and did have a .22 caliber handgun and two shotguns in his residence. App. at 49. Agent Tureaud then attempted to advise defendant of his Miranda rights, id., but was interrupted by defendant who made further incriminating statements. Shortly thereafter, defendant demanded his driver's license back and left the car. The interview lasted between three and five minutes.
 
 
 4
 Within hours of defendant's statements, a search warrant was obtained and executed. The search resulted in the seizure of three firearms from defendant's residence. Defendant was subsequently arrested and charged with violation of 18 U.S.C. App. Sec. 1202.
 
 
 5
 On March 16, 1983, the district court held an evidentiary hearing on defendant's motion to suppress his earlier statement. The district court held that the atmosphere of the interview was coercive and that the officer should have advised defendant of his Miranda rights prior to questioning. The district court granted the motion to suppress, and the government took an interlocutory appeal. Because the district court based its decision on the fact that the interview occurred in a coercive atmosphere, rather than on whether defendant was 'in custody,' this court remanded the case for further consideration in light of Oregon v. Mathiason, 429 U.S. 492, 97 S. Ct. 711 (1977) and California v. Beheler, 463 U.S. 1121, 103 S. Ct. 3517 (1983). On remand the district court denied the motion to suppress and stated that with the exception of the fact that Detective Parker had defendant's driver's license 'there was no indication that [defendant] was not free to leave.' App. at 62.
 
 
 6
 On September 19, 1984, following a jury trial, defendant was found guilty of possessing a firearm in violation of 18 U.S.C. App. Sec. 1202(a)(1). On November 28, 1984, defendant was sentenced to a term of eighteen months' imprisonment. Defendant's subsequent motion for bond pending appeal was denied by the district court. In so doing the district court held that the request for bond pending appeal was governed by 18 U.S.C. Sec. 3143.
 
 II.
 A. Motion to Suppress
 
 7
 Defendant argues that the statements made to Agent Tureaud were obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), and thus should have been suppressed. Miranda applies only to 'custodial interrogation.' In the instant case there is no question that defendant was interrogated. Thus, the focus of our inquiry is whether defendant was 'in custody' at the time of the interrogation.
 
 
 8
 Defendant argues that '[w]hen viewed in the totality of circumstances it is clear that a reasonable, innocent man under the relevant circumstances would have believed that they would not have been free to leave the police automobile.' Brief of Edward Dixon at 22. Whether a reasonable person would have believed that they were free to leave, although possibly relevant to our inquiry here, is not the test for determining the application of Miranda. The test relied on by defendant has been applied to determine whether an individual has been 'seized' for Fourth Amendment purposes. See, e.g., United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980). Miranda warnings, on the other hand, are mandated only when 'a suspect's freedom of action is curtailed to a 'degree associated with a formal arrest." Berkemer v. McCarty, 468 U.S. ----, ----, 104 S. Ct. 3138, 3151 (1984) (emphasis added) (quoting California v. Beheler, 463 U.S. 1121, ----, 103 S. Ct. 3517, 3520 (1983) (per curiam)).
 
 
 9
 As has been demonstrated by recent Supreme Court decisions, a 'seizure' under the Fourth Amendment involves significantly less involvement on the part of the police than does a 'custodial interrogation' required to trigger Miranda safeguards. Compare Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396 (1979) ('stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief.') with Berkemer v. McCarty, 468 U.S. ----, ----, 104 S. Ct. 3138, 3148 (1984) ('roadside questioning of a motorist detained pursuant to a routine traffic stop [not] considered 'custodial interrogation" for Miranda purposes). Cf. Hayes v. Florida, 470 U.S. ----, ----, 105 S. Ct. 1643 (1985) (full Fourth Amendment protections--rather than Terry safeguards--apply when police 'forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station where he is detained, although briefly, for investigative purposes. [S]uch seizures . . . are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause.').
 
 
 10
 Turning to the facts of the instant case, defendant contends 'that the taking of his driver's license while in the back seat of a police automobile was such a restriction on his freedom as to render him 'in custody' for purposes of the Miranda safe guards [sic].' Brief of Edward Dixon at 24. Although these facts may at least arguably constitute a 'seizure,' standing alone they are a far cry from a formal arrest. Moreover, the atmosphere of this confrontation must be considered in its totality. The interrogation was conducted by only two officers who were dressed in plain clothes, not uniforms. The interrogation was conducted in an unmarked 'police' car with unlocked doors, in public view, in front of defendant's residence. Finally, we note that the interrogation was brief, lasting between three and five minutes.
 
 
 11
 The fact that Detective Parker held defendant's driver's license and that defendant was seated in the back of a 'police' car does not begin to approach the 'police dominated' atmosphere required for application of Miranda. Compare New York v. Quarles, 467 U.S. ----, ----, 104 S. Ct. 2626, 2631 (1984) (suspect surrounded by four police officers and handcuffed in a public place is in custody for purposes of Miranda); Orozco v. Texas, 394 U.S. 324, 327, 89 S. Ct. 1095, 1097 (1969) (suspect arrested and questioned by four police officers in his bedroom, Miranda warnings required); Miranda v. Arizona, 384 U.S. 436, 445, 86 S. Ct. 1602, 1612 (1966) (defendants taken into custody and transported to a police station where 'incommunicado interrogation' occurred); with Minnesota v. Murphy, 465 U.S. 420, ----, 104 S. Ct. 1136, 1144-45 (1984) (statement by probationer to probation officer without Miranda warnings admissible although conditions of probation required truthful answers to questions, probationer was required to come to the office, and the officer was seeking incriminating statements); California v. Beheler, 463 U.S. 1121, ----, 103 S. Ct. 3517, 3518-19 (1983) (Miranda warnings not required when suspect voluntarily came into police station and, after a brief interview in a coercive atmosphere, was released); Oregon v. Mathiason, 429 U.S. 492, 493-96, 97 S. Ct. 711, 713-14 (1977) (parolee interrogated at state parole office but told he was not under arrest held not entitled to Miranda warnings).
 
 B. Bond Pending Appeal
 
 12
 Defendant argues that the district court erred in denying his motion for bond pending appeal. Defendant's argument on this issue is made in two parts. Defendant asserts first that the Bail Reform Act of 1984, 18 U.S.C. Sec. 3143, relied upon by the district court, is ex post facto as applied to him. Alternatively, defendant argues that under the terms of the Bail Reform Act of 1984, his motion for bond pending appeal should have been granted. In response, the government points out that once this court decides the appellate issues defendant's bond issue will be moot. As defendant through counsel conceded during oral argument, the government is clearly correct. Moreover, we note that defendant's ex post facto argument has now been uniformly rejected by every circuit addressing the issue. United States v. Ballone, 762 F.2d 1381, 1382-83 (11th Cir. 1985); United States v. Powell, 761 F.2d 1227, 1234 (8th Cir. 1985); United States v. Molt, 758 F.2d 1198, 1200-01 (7th Cir. 1985), petition for cert. filed, 54 U.S.L.W. 3330 (U.S. Oct. 24, 1985) (No. 85-705); United States v. Crabtree, 754 F.2d 1200 (5th Cir.), cert denied, 105 S. Ct. 3528 (1985); United States v. Miller, 753 F.2d 19, 21 (3d Cir. 1985).
 
 C. Interstate Commerce
 
 13
 Defendant's final argument is also made in two parts. First, defendant asserts that there was no showing that the weapons which he possessed affected interstate commerce. Second, defendant argues that there was no evidence showing that the guns, which were manufactured prior to the effective date of the statute, affected interstate commerce after the effective date of the statute.
 
 
 14
 A brief review of the record rebuts the first part of defendant's argument. At trial a firearms expert testified that the guns were manufactured outside of Michigan and thus, necessarily, were transported across state lines. App. at 97-101. By presenting this evidence the government carried its burden. United States v. Bass, 404 U.S. 336, 350, 92 S. Ct. 515, 524 (1971). Turning to defendant's second argument we note that in United States v. Day, 476 F.2d 562, 569 (1973), we held that 'there is no requirement that the guns move in interstate commerce after the effective date of the Act.' See also United States v. Three Winchester 30-30 Caliber Lever Action Carbines, 504 F.2d 1288, 1291 n.8 (7th Cir. 1974).
 
 III.
 
 15
 In accordance with the foregoing, we AFFIRM defendant's conviction for violation of 18 U.S.C. App. Sec. 1202(a)(1).
 
 
 16
 CELEBREZZE, Senior Circuit Judge, dissenting.
 
 
 17
 Since I believe that the actions of Agent Tureaud and Detective Parker rendered Dixon 'in custody' within the meaning of Miranda v. Arizona, 384 U.S. 436, 444 (1966), I respectfully dissent.
 
 
 18
 To put the issue of whether Dixon was in custody in perspective, I will carefully detail the facts. Agent Tureaud accompanied by Detective Parker, of the Inkster Police Department,[1] went to Dixon's residence to determine if Dixon was a convicted felon in possession of firearms. Detective Parker knocked on Dixon's door and Dixon appeared in a picture window and asked who the police officers were and what they wanted. In response, Detective Parker identified himself and told Dixon that he would like to talk to him. Dixon, after apparently calling the Inkster Police Department to verify Detective Parker's identity, reappeared at the picture window. The police officers again identified themselves and asked Dixon to come out of the house. Dixon complied.
 
 
 19
 Once Dixon was outside, the police officers, ostensibly due to the inclement weather,[2] requested that Dixon accompany them to Agent Tureaud's government car parked in front of the residence. Dixon took a seat in the back of the car while the two police officers sat in the front; the doors to the car were unlocked. Detective Parker acting pursuant to 'standard procedure' immediately requested Dixon's driver's license which Dixon produced and turned over. Agent Tureaud then informed Dixon that he 'had reason to believe that he was a convicted felon illegally in possession of some firearms.' Agent Tureaud proceeded to question Dixon concerning whether he had a prior record and whether he had any weapons or firearms.[3] After Dixon responded affirmatively to the first question, Agent Tureaud attempted to give Miranda warnings to Dixon, but was interrupted by Dixon's additional admission that he was in possession of several guns. After some further discussion, Dixon's driver's license was returned to him and he left the car. The majority holds that, under these facts, Dixon was not in custody within the meaning of Miranda. I disagree.
 
 
 20
 A person is rendered 'in custody' for purposes of Miranda when he has been 'deprived of his freedom of action in any significant way.' Miranda, 384 U.S. at 444 (footnote omitted). This occurs when a person is 'subjected to restraints comparable to those associated with a formal arrest.' Berkemer v. McCarty, 104 S. Ct. 3138, 3151 (1984); see Sevier v. Turner, 742 F.2d 262, 267-68 (6th Cir. 1984). In determining whether sufficient restraints have been placed upon a person to render them in custody, the court applies an objective test, e.g., McCarty v. Herdman, 716 F.2d 361, 362 n.1 (6th Cir. 1983), aff'd sub nom. Berkemer v. McCarty, 104 S. Ct. 3138 (1984), considering the totality of the circumstances, e.g., California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam).
 
 
 21
 A good starting point for analyzing whether a person is in custody is recognizing that, although not every seizure within the purview of the Fourth Amendment suffices to render a person in custody for Miranda purposes, see Berkemer, 104 S. Ct. at 3150-51 (noting Terry stops not subject to Miranda); United States v. Streifel, No. 84-1932 (1st Cir. January 17, 1986), when a person 'reasonably believes that he cannot leave freely, he is considered in custody.' United States v. Luther, 521 F.2d 408, 410 (9th Cir. 1975) (per curiam); accord United States v. Booth, 669 F.2d 1231, 1235 (9th Cir. 1981) (citing cases); United States v. Mesa, 638 F.2d 582, 588 (3d Cir. 1980) (Seitz, J.); United States v. Tobin, 429 F.2d 1261, 1264 (8th Cir. 1970); United States v. Hall, 421 F.2d 540, 545 (2d Cir. 1969), cert. denied, 397 U.S. 990 (1970); United States v. Razzag, 524 F. Supp. 881, 883 (E.D. N.Y. 1981); United States v. Thevis, 469 F. Supp. 490, 505 (D. Conn.), aff'd, 614 F.2d 1293 (2d Cir. 1979), cert. denied, 446 U.S. 908 (1980); see also Minnesota v. Munphy, 465 U.S. 420, 433 (1984) (stressing suspect was free to leave at any time); Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam) (noting freedon to depart not restricted). The extent to which a suspect's freedom of action has been restricted is an objective test; it makes no difference whether the suspect subjectively believes he is in custody or whether the police subjectively believe that a person is free to leave. See Berkemer, 104 S. Ct. at 3152 (police officers unarticulated plan has no bearing); United States v. Waltzer, 682 F.2d 370, 374 (2d Cir. 1982) (subjective intentions didn't turn stop into an arrest), cert. denied, 463 U.S. 1210 (1983); United States v. Harris, 611 F.2d 170, 173 (6th Cir. 1979) (agents never informed defendant could not let leave). The type of questioning, e.g., United States v. Pratt, 645 F.2d 89, 91 (1st Cir.), cert. denied, 454 U.S. 881 (1981), and the extent to which the defendant is confronted with guilt, e.g., United States v. Curtis, 568 F.2d 643, 646 (9th Cir. 1978), may be indicative of the degree of restraint placed upon the suspect. While the mere fact that a person is the focus of the investigation is immaterial, e.g., United States v. Lewis, 556 F.2d 446, 448 (6th Cir.) (per curiam), cert. denied, 434 U.S. 863 (1977), '[t]he more cause for believing the suspect committed the crime, the greater the tendency to bear down in interrogation and to create the kind of atmosphere of significant restraint that triggers Miranda.' Hall, 421 F.2d at 545. Of paramount significance is whether the police have taken control over any of the suspect's personal property. See United States v. McCain, 556 F.2d 253, 255 (5th Cir. 1977) (withholding of luggage significant enough restraint to trigger Miranda); cf. United States v. Thompson, 712 F.2d 1356, 1359-60 (11th Cir. 1983) (withholding of driver's license would cause a reasonable person to believe that he is not free to leave) (citing cases). Finally, the physical surroundings in which the questioning occurs may be critical. See Orozco v. Texas, 394 U.S. 325 (1969) (suspect surrounded by four police officers).
 
 
 22
 Before applying the law to the facts of this case, I briefly comment upon our standard of review. Of course, the district court's factual findings are subject to the clearly erroneous standard. E.g., United States v. Coleman, 628 F.2d 961, 963 (6th Cir. 1980). However, the application of the facts to the correct legal standard for determining whether a person is in custody is a matter of law. See California v. Beheler, 463 U.S. 1121 (1983) (per curiam); Oregon v. Mathiason, 429 U.S. 492 (1977) (per curiam); United States v. Blum, 614 F.2d 537 (6th Cir. 1980); United States v. Harris, 611 F.2d 170 (6th Cir. 1979). Thus, since the facts in this case are undisputed, I review the district court's determination de novo.[4]
 
 
 23
 The coalescence of three acts require the conclusion that Dixon was 'in custody.' First, the questioning occurred in Tureaud's government car. Although the car was unlocked, Dixon was placed in an unfamiliar atmosphere, see Murphy, 465 U.S. at 433, and in such surroundings a reasonable person would feel some compulsion to comply with the requests of police officers. Next, the police officers requested and took control of Dixon's driver's license. Once Dixon relinquished his license, he was not free to simply get out of the car and walk away. McCain, 556 F.2d at 255 (withholding of luggage rendered suspect in custody); cf. Florida v. Royer, 460 U.S. 491, 509, 512 (1983) (Brennan, J., concurring) ('It is simply wrong to suggest that a traveler feels free to walk away when he has been approached by individuals who have identified themselves as police officers and asked for, and received, his airline ticket and driver's license.') Finally, the crucial fact which placed Dixon, for all practical purposes, under arrest was Agent Tureaud's statement that he 'had reason to believe that he was a convicted felon illegally in possession of some firearms.'
 
 
 24
 Agent Tureaud's accuation, under these particular circumstances, is what I believe Judge Friendly was referring to when he opined 'in the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so.' Hall, 421 F.2d at 545. In my view, this accusation shifted the confrontation 'from investigatory to accusatory,' Escobeda v. Illinois, 378 U.S. 478, 492 (1964), and hence deprived Dixon of his freedom of action in a significant way. Miranda, 384 U.S. at 444 n.4. Agent Tureaud's subsequent questioning confirms this. The questions, whether Dixon was a felon and whether he was in possession of any firearms, were not in the nature of on the scene investigatory questioning, see Arnold v. United States, 382 F.2d 4, 7 n.3 (9th Cir. 1967); rather, if answered, as Dixon did, constituted a confession to the crime of being a felon in possession of a firearm, see 18 U.S.C. App. 1202(a)(1) (1982). I recognize that the police officers, upon Dixon's request, returned Dixon's license to him and permitted him to leave the car. However, after Dixon confessed to being a felon in possession of a firearm, the police officers had no reason to detain Dixon any longer.
 
 
 25
 Finally, as a practical matter Dixon was in custody. I believe that a reasonable person situated in the back seat of a government car, deprived of his driver's license, and accused of criminal conduct would believe that his freedom of action was deprived in a significant way. As this case demonstrates, legal tests and standards sometimes tend to have a life of their own and become disassociated from the real-life problem they were intended to resolve. Miranda v. Arizona was a practical decision, Miranda, 384 U.S. at 467 (noting that states may impose other alternatives), aimed at protecting citizens from being subjected to methods of incommunicado interrogation which were at odds with 'one of our Nation's most cherished principles--that the individual may not be compelled to incriminate himself.' Miranda, 384 U.S. at 457-58. 'In custody,' therefore, should be interpretted in accordance with the standards of an average citizen with a view to safeguarding a citizen's right to remain silent. In my view, since Dixon was placed in a situation where he needed the protections which Miranda provides and since Dixon was not realistically free to leave the police car, he was, as a practical matter, under arrest.
 
 
 26
 For the foregoing reasons, I would reverse the judgment of the district court.
 
 
 
 [1]
 Detective Parker accompanied Agent Tureaud both for safety purposes and as a matter of inter-departmental courtesy
 
 
 [2]
 Agent Tureaud testified to this effect, but the district court never explicitly adopted this testimony
 
 
 [3]
 The government does not challenge the district court's original holding that the questions posed by Agent Tureaud to Dixon constituted interrogation within the purview of Miranda
 
 
 [4]
 De novo review is especially appropriate in this case since the district court judge believed he was compelled by this Court's decision remanding his original determination to hold that Dixon was not in custody: 'Considering the Sixth Circuit Court opinion and their expression that they have serious doubt now as to this case, and other facts as the Court has earlier determined, then, I think I have no choice--and when I did have a choice, I went the other way--but now I don't think I have any choice but to deny the motion to suppress.'