## COTZHAUSEN *v.* NAZRO.

1. Dutiable goods cannot lawfully be imported in the foreign mail under the International Postal Treaty of Berne of Oct. 9, 1874. 19 Stat. 577.
2. Such goods are, in the hands of the receiver of them from the post-office, subject to seizure; and the fact that there was no intent on the part of the sender or the receiver of them to defraud the United States of the duty, does not render the customs officer liable to an action for making the seizure.

ERROR to the Circuit Court of the United States for the Eastern District of Wisconsin.

The case is stated in the opinion of the court.

*Mr. F. W. Cotzhausen* for the plaintiff in error.

*Mr. Assistant Attorney-General Maury* for the defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This was a suit commenced before a justice of the peace by Cotzhausen against Nazro and Payne, for seizing and converting to their own use a flexible woollen scarf or shawl of the value of four dollars. It was removed into the Circuit Court of the United States by a writ of *certiorari*, on the ground that Nazro was collector of customs of the United

States for the port of Milwaukee, and that what was done in seizing the shawl was in performance of his duty as such collector.

On the trial in that court it appeared that the article in question came in a closed or sealed envelope by foreign mail from Germany, and the proper officer of the customs at Milwaukee being notified to be present when the letter was delivered to and opened by the plaintiff, seized it as forfeited under the customs laws of the United States.

The jury being requested to make a special verdict, answered the questions propounded to them by the court as follows:—

" *Question 1st.* Was the article in question sent from a foreign country by mail, enclosed in a sealed envelope addressed to the plaintiff at Milwaukee, and was it transmitted by mail, thus enclosed, to its point of destination?

" *Answer.* Yes.

" *Quest. 2d.* Were the contents of the package disclosed by any writing placed upon it by the sender?

" *Ans.* Yes.

" *Quest. 3d.* Was the package received at the post-office in Milwaukee, and, if so, was the collector of customs for this district notified of its receipt?

" *Ans.* Yes.

" *Quest. 4th.* Was the package placed in the hands of the plaintiff by a clerk in the post-office, in the presence of the deputy collector, and did she open it?

" *Ans.* Yes.

" *Quest. 5th.* Did the deputy collector of customs then seize the article in question, after it was opened?

" *Ans.* Yes.

" *Quest. 6th.* Did the collector thereafter cause said article to be appraised by the appraiser for this collection district, and did he refuse to surrender it to the plaintiff without payment of the amount of such appraisal?

" *Ans.* Yes.

" *Quest. 7th.* Was the article sent by mail for the purpose or with intent on the part of the sender or the plaintiff to avoid the payment of duties thereon?

" *Ans.* No.

"*Quest. 8th.* What was the value of said article on the twenty-first day of May, 1877?

"*Ans.* $4.00."

And on this verdict the Circuit Court rendered a judgment for the defendants with costs.

A bill of exceptions is signed embodying all the evidence in the case, from which it appears that there was no little ill-feeling in the case on the part of the plaintiff and her attorneys, who refused to make application to the Secretary of the Treasury for a remission of the penalty, and that the seizure was reported to him and to the proper law officers by the collector. But as no ruling of the court was made on the admission or rejection of this evidence, and as no instructions of the court were given or asked, and no exception was taken to any ruling of the court at the trial, the bill of exceptions is of no value here.

The plea to the action was the general issue, and we must look alone to the special verdict to see if it justified the judgment of the court.

The letter containing this scarf came from Germany to the United States under the international postal system, established by the treaty of Berne, of Oct. 9, 1874. The twenty-fifth article of the protocol to that treaty, which, under the signatures of the plenipotentiaries who negotiated it, is declared to be of the same force as if it was inserted in the treaty, provides that "there shall not be admitted for conveyance by the post any letter or *other packet* which may contain either gold or silver money, jewels, precious articles, or any article whatever liable to customs duties." 19 Stat. 604, art. 25.

While some attempt in argument is made to show that, either by treaty or by act of Congress, books, patterns of merchandise, and perhaps other articles may come through the foreign mail without liability to forfeiture, it is sufficient to say that the article seized in this case was not sent as a sample, nor is it a book or other article asserted to be admissible.

Its introduction into the United States in this manner is, therefore, forbidden by the express provisions of the postal treaty under which it came, which is the law of the land, and is unauthorized by any act of Congress.

No question is made in this case that the shawl was dutiable, or that the amount of the duty claimed on it was the proper duty.

Being dutiable, its introduction by mail into the United States was forbidden by the treaty. The revenue laws of the United States require that every owner or consignee of property imported from other countries shall report the same to the customs officers before it is landed from the vessel, and shall furnish an invoice of its character and purchase price, for valuation, or that it may be seen if it is duty free, and all the vexatious and annoying machinery of the custom-house, and the vigilance of its officers, are imposed by law to prevent the smallest evasion of this principle.

Of what avail would it be that every passenger, citizen and foreigner, without distinction of country or sex, is compelled to sign a declaration before landing, either that his trunks and satchels in hand contain nothing liable to duty, or if they do, to state what it is, and even the person may be subjected to a rigid examination, if the mail is to be left unwatched, and all its sealed contents, even after delivery to the person to whom addressed, are to be exempt from seizure, though laces, jewels, and other dutiable matter of great value may thus be introduced from foreign countries.

It is a violation of the law to introduce dutiable articles at all in that mode, and articles so introduced are liable to seizure for such violation.

But the jury found that the shawl was not sent by mail for the purpose or with the intent, on the part of the sender or the plaintiff, to avoid the payment of duties thereon; and it is said that, under sect. 3082 of the Revised Statutes, the goods cannot be seized or forfeited unless fraudulently or knowingly imported contrary to law.

Rev. Stat., sect. 3082, provides: " If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited, and the offender

shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both."

The language of this section is that if a person fraudulently *or knowingly* brings into the United States, or assists in so doing, any merchandise contrary to law, the goods shall be forfeited and the offender punished by fine and imprisonment; and while the jury negative the fraudulent intent, they do not negative the knowledge of the sender that the goods were sent in violation of law, or that they were dutiable goods.

This fraudulent and guilty knowledge, however, relates mainly to the punishment of the offender by fine and imprisonment, and other sections, as 3061, authorize and direct the seizure of any property imported contrary to law; and the officer is to open envelopes for that purpose, and, on reasonable ground to believe it subject to duty or to have been unlawfully imported, he shall seize and secure the same for trial.

In this case the article was unlawfully imported in a sealed envelope, and it was discovered and seized by the proper officer in the hands of the owner after she had opened it.

There is no finding by the jury as to what he did with it, except that he had it appraised. But the presumption is that he did his duty, by notifying the officers whose business it was to institute proceedings for condemnation; and though we may not properly look at the bill of exceptions, which shows what he did with it, this is unnecessary, for if the seizure was rightful, there is no evidence whatever of a wrongful conversion.

It has been suggested that by reason of sect. 16 of the act of June 22, 1874, c. 391, and the finding of the jury that there was no intention to defraud in this case, the defendants are liable. But that section relates to actions brought by the government to enforce the revenue laws by fine, forfeiture, and penalty, and declares that in such cases, unless there is a verdict of the jury or finding of the court that the alleged acts were done with an actual intention to defraud the United States, no fine, penalty, or forfeiture shall be imposed.

If the plaintiff in this case shall, in any proceeding in court for its condemnation, appear and claim this property, or any

suit shall be instituted against her personally for a violation of the revenue law, she can have the full benefit of this statute; or, if she is impatient of the delay of the officers in instituting such proceeding, she can, under sect. 3076 of the Revised Statutes, cause such proceeding to be instituted, in which she can have the same relief.

But if the present action be sustained on the ground of the absence of fraudulent intention on her part, the officer making the seizure is held liable in the absence of such a proceeding, though in such case the court might have protected him by a certificate of probable cause, and though he may have done his duty and been guilty of no conversion. Such a construction of the statute requires him to know the guilty or the innocent intent of a party violating the law at the hazard of personal liability for the result.

It is to be observed, also, that all the trouble, cost, and vexation of this suit could have been avoided by an application to the Secretary of the Treasury under sect. 5293 and the rules prescribed by that officer for such cases, when he would undoubtedly have remitted the forfeiture on what were the undisputed facts of the case, on payment of the small sum assessed as the duty.

We think that in making the seizure the defendants only did their duty, and that whatever the hardship was to the plaintiff, they are not liable in this action on the facts found in the verdict of the jury.

*Judgment affirmed.*

MR. JUSTICE FIELD did not sit in this case, nor take any part in deciding it.