UNITED STATES of America,
Plaintiff-Appellee,

v.

Sammy Wayne KENNEY,
Defendant-Appellant.

No. 78–5699
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1979.

Herbert E. Cooper, Asst. Federal Public Defender, El Paso, Tex., for defendant-appellant.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before AINSWORTH, CLARK and VANCE, Circuit Judges:

PER CURIAM:

Sammy Wayne Kenney was indicted in one count for importation of marijuana, 21 U.S.C. § 952(a), and in a second count for possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1). At the hearing on the motion to suppress, Paul R. Neely testified that he had been an officer of

* Rule 18, 5th Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

the U. S. Customs Service a little more than three years. He had been stationed at Big Bend National Park for a year and a half. On August 6, 1978, at 7:00 p. m., he was on duty in the Park observing the Rio Grande River crossing at Boquillas, Mexico, his surveillance point being located about 200 yards from the River. This crossing is an unstaffed Class B Port of Entry. Tourists are transported across the River from 7:00 a. m. until 6:00 p. m. by a row boat regularly operated by two Mexicans who were known to Officer Neely.

Through binoculars, he observed an Oldsmobile and a Valiant automobiles park in the lot located on a Park overlook above the crossing, about one-half mile away. A sign on the road to the crossing read as follows:

Persons arriving from Mexico with vehicle and/or baggage, mdse., must report to United States Customs. Failure to do so will subject you to penalties.

Nearest offices Presidio, Tex. open 24 hrs., Marathon, Tex. open 8:30 a.m.—5 p. m. Mon. thru Fri.

Neely saw a woman, two children, and a man wearing a red shirt and a light-colored cowboy hat get out of the Valiant. A man wearing only cut-off shorts exited the Oldsmobile. No one was carrying anything. The men went to the edge of the overlook and yelled. A man on the Mexican side of the River called back. The two men left the overlook on a footpath and disappeared from Neely's sight. When Neely saw them again, the shirtless man yelled across the River and waved his hands. Then the men proceeded down a footpath paralleling the River. Vegetation blocked Neely's view of the men.

Neely observed a green pickup and a white pickup on the Mexican side of the River. Three Mexicans, none of whom was a regular boat operator, operated the row boat across the River. At the landing, two Mexicans got out, leaving one man in the rear of the boat. Although the persons standing at the River were not fully visible, Neely could see that one of them was wearing a red shirt. The Mexican in the boat picked up a large, light-colored bag and handed it to someone on the beach. Soon thereafter, Neely saw that one of the men was back at the overlook and was placing the bag into the trunk of the Valiant.

Neely and his partner quickly proceeded to the intersection of the only Park roads leading from the overlook. The Oldsmobile and the Valiant appeared and ran the stop sign at the intersection. Two Customs officers who had come to assist Neely and his partner followed the Oldsmobile. With flashing red lights, Neely followed the Valiant. The Valiant stopped at a location approximately one mile from the River. Neely told the driver, defendant Kenney, who was wearing a red shirt, to get out of the vehicle. Kenney complied. After advising Kenney that he was a U. S. Customs officer, Neely took the keys from the ignition and opened up the trunk of the Valiant. Inside he found two light-colored mesh bags containing marijuana. The bags and their contents weighed 61 pounds. Neely has participated in 20 to 25 seizures of marijuana in this area. The majority of them involved light-colored mesh bags such as these.

The district court denied Kenney's motion to suppress. The jury found Kenney guilty on both counts. Consecutive sentences of two years' imprisonment and five years' special parole terms were imposed.

Officer Neely was authorized by 19 U.S.C. § 482[1] to make this stop of Kenney's vehicle and search its trunk if he had rea-

1. In pertinent part, § 482 provides:

§ 482. Search of vehicles and persons

Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; . . . .

sonable cause to suspect that it contained merchandise imported contrary to law. 21 U.S.C. § 952(a) makes unlawful the importation into the customs territory of the United States from any place outside thereof any controlled substance, *e. g.,* marijuana, with certain exceptions not pertinent here. 21 U.S.C. § 841(a)(1) makes unlawful the knowing or intentional possession with intent to distribute a controlled substance.

The authority granted by § 482 is, of course, subject to the requirements of the fourth amendment. *United States v. Bowman,* 502 F.2d 1215, 1218 (5th Cir. 1974). However, Neely's actions were fourth amendment proper because he was possessed of objective facts which formed a basis for reasonable suspicion that customs laws were being violated and that the object of his search had crossed the border. *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977); *United States v. Johnson,* 588 F.2d 147, 153–6 (5th Cir. 1979). *Cf. United States v. Williams,* 544 F.2d 807 (5th Cir. 1977), relating to customs ship searches under 19 U.S.C. § 1581.

Neely had observed persons from the Oldsmobile and Valiant make contact at the international border with persons coming into the United States from Mexico. He had seen a large, light-colored bag of the sort commonly used to contain marijuana being exchanged between the persons who had crossed from Mexico, and he subsequently had seen the bag being placed into the trunk of the Valiant. The facts known to Neely at the time formed a solid basis for reasonable suspicion that a violation of the customs laws of the United States was taking place. Kenney mistakenly relies on *United States v. Resendez,* 578 F.2d 1041 (5th Cir. 1978). Officer Neely's suspicion was not based upon mere presence of Kenney's vehicle near the border, as was the case in *Resendez,* but upon direct observation of a border crossing and an importation of material bearing a hallmark of contraband.

■ Kenney argues that the evidence was insufficient to establish knowing, in-

tentional importation contrary to 21 U.S.C. § 952. He relies upon the sign posted at the point of entry advising that a declaration of merchandise could be made at the Customs Offices in Presidio or Marathon, Texas. He urges that importation could not have been accomplished until it became certain that he was not on his way to one of these cities to declare whatever merchandise was contained in the white bags. He notes that Neely gave him no opportunity upon stopping him to properly declare the merchandise. The authority he urges to support this contention is our decision in *Leary v. United States,* 544 F.2d 1266 (5th Cir. 1977), but *Leary* is not apropos here. *Leary* was prosecuted under 21 U.S.C. § 176a as it read on December 22, 1965. That statute then made it unlawful to import or bring into the United States marijuana contrary to law. Provision was made for the declaration of that substance and the payment of a tax. On the basis of the law as it then obtained, we stated that if marijuana were brought into the United States and properly declared at the point of entry, possession from the border to the point of declaration did not constitute illegal importation. The present statutory scheme is different. 21 U.S.C. § 952 condemns any importation of a controlled substance. Kenney's possession of marijuana was illegal from the spot and moment it commenced, to the point of arrest and time of seizure. Kenney was not charged with failing to make a declaration of goods subject to tax or reporting requirements. The charge is importation of a controlled substance, and the evidence was sufficient to establish that charge.

The convictions are

AFFIRMED.