**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Raymond RICHARDS,**
**Defendant-Appellant.**

No. 78–5728.

United States Court of Appeals,
Fifth Circuit.

March 2, 1981.

Rehearing Denied June 1, 1981.

border search rule when there has been continuous surveillance of the mail and reasonable suspicion that it contains contraband, we deny a motion to suppress the results of the search and affirm the conviction of the recipient for possession of heroin with intent to distribute it.

## I. The Facts

On December 5, 1977, Raymond Richards, an airline steward stationed at the Miami International Airport, applied for a post office box at the Miami Springs, Florida post office, located near the airport. He designated the boxholder as Mehling Arts & Crafts, furnished identification showing that he was Christopher Thompson and signed the application in that name. The application was approved and a box assigned to Mehling was opened for use on December 15.

On March 2, 1978, a sealed parcel addressed to Mehling Arts & Crafts at the Miami Springs box number arrived at the Foreign Mail Center in New York. The customs declaration stated that it contained Thai silk and uncut stones. The parcel was opened and inspected by a customs agent who found 10 cigarette packages. He opened one of these, found cigarettes and sent the parcel to another officer for further inspection because it appeared to contain a tobacco product. The second officer opened two more cigarette packages; each contained vials of material that on field test was found to be heroin. Neither the amount of heroin in the parcel nor its strength was established in New York.

Milton E. Grusmark, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Linda Carroll, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

The parcel was reassembled, resealed and sent to the postal inspector in Miami in a locked pouch for controlled delivery. Government agents delivered it to the Miami Springs post office on March 13 with instructions to put a notice of arrival in the Mehling box. A postal employee testified that she had never seen mail in the Mehling box until this parcel arrived. Drug Enforcement Administration agents set up surveillance of the box and waited for someone to claim the parcel.

Before GODBOLD, Chief Judge, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Under the border search doctrine, federal agents may without a warrant inspect mail arriving in this nation from abroad. We here consider whether the foreign mail may be followed into the hands of its addressee and, immediately after delivery, be seized and searched without a warrant. Concluding that such a search is permitted by the

Richards arrived in a half hour or less, received the notice and asked for the package. There was a slight delay because he had no identification showing a connection with Mehling, but the package was given to him. Government agents watched Richards take the package. They continued to observe him as he walked out of the building, down a side street for a short distance and into a parking lot behind the post office. The agents exercised care to assure that he had no opportunity to leave the scene with the parcel. They arrested him just as, or just after, he entered his car. The agents addressed Richards as Christopher Thompson and he responded by giving his correct name. The agents gave him *Miranda* warnings and asked him why he had picked up the package. He replied by asking the agents what was in the parcel. When they told him that it contained narcotics, Richards said he knew nothing about it. He explained that someone had telephoned him, asked him to pick up the package and promised to pay him for doing so.

The government agents took Richards to a police facility a few blocks away. He was fingerprinted, photographed, booked and placed in a holding cell. While he was there, the sealed parcel was opened without a warrant outside of his presence. Later its contents were analyzed by a chemist, who found 27.4 grams of 93% heroin hydrochloride. He estimated that, when "cut," it would produce 12,000 street level doses.

Richards was indicted for possession of heroin with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). At his trial, he testified that he operated a mail order business importing and selling uncut gems and maintained a postal box at the Miami post office in connection with that business. According to his testimony, Richards had recently started Mehling Arts & Crafts as a mail order export-import business and needed a separate post office box for it, but none was available at the Miami post office. He testified that he used a false name to apply for the Miami Springs box because he feared that operating two outside enterprises might affect his job as a steward. A personnel administrator for the airline testified that it was permissible for the company's employees to have outside jobs and that many held other jobs, but he acknowledged that in some circumstances outside employment might have an adverse affect on an employee's job.

II. Sufficiency of the Evidence

█ To prove commission of the crime of possession of heroin with intent to distribute it, the government must establish three essential elements: (1) knowing (2) possession of heroin (3) with intent to distribute it. *United States v. Johnson*, 469 F.2d 973, 976 (5th Cir. 1972); *United States v. James*, 555 F.2d 992, 999 (D.C.Cir.1977). Richards contends the evidence was insufficient to prove either that he knew the parcel contained a controlled substance or that he had the intention of distributing it.

█ Our review of the jury verdict is limited to determining whether the trier of fact could reasonably conclude that the evidence excludes every reasonable hypothesis, except that of guilt. *United States v. Hawkins*, 614 F.2d 85, 87 (5th Cir.), *cert. denied*, 446 U.S. 955, 100 S.Ct. 2926, 64 L.Ed.2d 814 (1980), *United States v. Squella-Avendano*, 478 F.2d 433, 436 (5th Cir. 1973). The issue of guilt remains a question for the jury unless we conclude that the jury must necessarily have had a reasonable doubt. *United States v. Shaw*, 555 F.2d 1295, 1300 (5th Cir. 1977); *United States v. Warner*, 441 F.2d 821, 825 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). The supporting evidence may be direct or circumstantial and we do not discriminate against sufficiently probative evidence because it is indirect. *Id.* at 825.

The evidence, examined in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), establishes that: (1) Richards opened the post office box in a false name and had no convincing explanation for doing so; (2) no mail except the parcel containing heroin had come to the post office box in the three months during which it was rented; and (3) the excuse Richards advanced after he was ar-

rested, that someone else had asked him to pick up the package, was in truth inculpatory and indicated guilty knowledge because the package was addressed to his company and he had rented the box.

■ These facts are circumstantial evidence on the issue of knowledge. Because no one has a window to a man's mind, knowledge must often be proved by indirect evidence. *Johnson v. Wright*, 509 F.2d 828, 831 (5th Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384 (1975); *Jackson v. United States*, 330 F.2d 679, 681 (8th Cir.), *cert. denied*, 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58 (1964). The evidence was sufficient to permit the jury to infer that Richards knew from what he said and did that the package contained narcotics. *See also United States v. Squella-Avendano*, 478 F.2d 433 (5th Cir. 1973) (similar amount of evidence held sufficient).

■ Richards having indisputably possessed heroin when he was arrested, we are left only with the question whether the evidence was sufficient to support the jury's conclusion that he intended to distribute it. That intention may not be inferred from possession alone, for contraband may be destined for personal use, not distribution. However, the possession of a quantity of narcotics so large that it could not be used by the possessor alone justifies the conclusion that he had an inventory for distribution rather than personal consumption. *See United States v. Grayson*, 625 F.2d 66 (5th Cir. 1980); *United States v. Soto*, 591 F.2d 1091, 1103 (5th Cir.), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979); *United States v. Raffo*, 587 F.2d 199, 201 (5th Cir. 1979); *United States v. Johnson*, 469 F.2d 973, 977 (5th Cir. 1972). The jury was warranted in concluding that one who possessed 12,000 doses of heroin did not intend to use the supply merely for personal euphoria. If, therefore, the warrantless post-delivery search was constitutionally proper and the evidence derived from it was properly admitted, the essential elements of the crime were proved.

### III. Search of the Package

Richards does not challenge the admissibility of evidence obtained from the initial search of the package in New York and the field test that first disclosed its contents. He stipulated that the package contained heroin when searched in New York and that the chain of custody between New York and Miami Springs was complete. Because the initial test did not establish the quantity of heroin in the package, however, the second search was crucial to proving his intent to distribute.

### A. Standing to Assert Fourth Amendment Rights

The question of Richards' standing to contest the search was not raised in the court below. On appeal the government argued proleptically that the Supreme Court decision in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), foretold the coming demise of the concept of "automatic standing" for possessory crimes. In *United States v. Salvucci*, —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), the Court followed the intimations of *Rakas v. Illinois*, 439 U.S. at 135 n.4, 99 S.Ct. at 426 n.4, 58 L.Ed.2d at 396 n.4, and *Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 1568–69, 36 L.Ed.2d 208, 214 (1973), and held that automatic standing does not justify the assertion of fourth amendment protection.

■ Fourth amendment protection is accorded only to a person who has a privacy interest in the area searched, *Rawlings v. Kentucky*, —— U.S. ——, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), a rubric adopted from a phrase used in *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967). Instead of conducting a separate inquiry into standing, we now focus directly on whether the defendant possesses a legitimate expectation of privacy in the area searched. *Rawlings v. Kentucky*, —— U.S. ——, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

The package was sealed and addressed to Mehling, which, in effect, was Richards. These facts alone indicate "an expectation that the contents would remain free from public examination." *United States v. Chadwick*, 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538, 548 (1977). *See generally Katz v. United States*, 389 U.S. at 352, 88 S.Ct. at 511–12, 19 L.Ed.2d at 582. Moreover, sealed mail historically has been considered to have a high degree of privacy, and government intrusion into mailed parcels is limited by the fourth amendment. *See United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); *Ex parte Jackson*, 96 U.S. 727, 24 L.Ed. 877 (1878).

▄▄▄ Although the Supreme Court has rejected the importation into search and seizure law of arcane distinctions evolved in property law, *Rakas v. Illinois*, 439 U.S. at 149–50 n.17, 99 S.Ct. at 434, n.17, 58 L.Ed.2d at 405 n.17, we note that Richards was in lawful possession of the package when it was seized. *Cf. Rakas v. Illinois*, 439 U.S. at 153, 99 S.Ct. at 435, 58 L.Ed.2d at 407 (Powell, J., concurring) ("property rights reflect society's explicit recognition of a person's authority to act as he wishes in certain areas, and therefore should be considered in determining whether an individual's expectations of privacy are reasonable"). It is, therefore, not dispositive that Richards denied ownership of the package. Considering all the circumstances, we conclude that he had a legitimate expectation that the contents of the package were private,[1] and has standing to assert fourth amendment protection.

## B. Border Search

▄▄▄ Under the fourth amendment, all warrantless searches and seizures are unreasonable except those conducted in a few narrowly defined situations where the circumstances justifying the search outweigh privacy rights. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Sink*, 586 F.2d 1041 (5th Cir. 1978), *cert. denied*, 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). Because the fourth amendment expressly prohibits only unreasonable warrantless searches, it patently incorporates a balancing test, weighing in one measure the level of intrusion into individual privacy and in the other the public interest to be served. *United States v. Martinez-Fuerte*, 428 U.S. 543, 555, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116, 1126–1127 (1976); *United States v. Himmelwright*, 551 F.2d 991, 994 (5th Cir.) *cert. denied*, 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Thus, a warrantless search is justified when it is incident to a lawful arrest, *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); when it is conducted with probable cause under exigent circumstances, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); when it involves a vehicle, *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); or when it is made for administrative purposes to satisfy a special governmental need and necessity outweighs the invasion entailed, *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

▄▄▄ Warrantless searches may also be made at the border. These searches, undertaken pursuant to the historical right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are deemed reasonable simply by virtue of the fact that they occur at the border. *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977); *Carroll v. United States*, 267 U.S.

---

1. Because a defendant cannot challenge the search or seizure of abandoned property, *see United States v. Canady*, 615 F.2d 694 (5th Cir. 1980), *United States v. Anderson*, 500 F.2d 1311 (5th Cir. 1974), the government urges that Richards had abandoned the package. In the cases cited, however, the defendant had abandoned all claim to the property. In contrast, while Richards denied ownership of the package, he claimed he was picking it up for someone else. This amounted to assertion of a lawful possessory claim. While not alone sufficient to establish a legitimate expectation of privacy, the claim does demonstrate that Richards manifested no intention of abandoning the package that he held under his arm.

132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This sovereign right was recognized by the First Congress, Act of July 31, 1789, ch. 5, 1 Stat. 29 (1789), and statutes exempting border searches from warrant and probable cause requirements have been in force in this country ever since.[2]

■ A border search need not take place at the actual border. It may be conducted at a place considered "the functional equivalent of the border," such as the port where a ship docks in this country after entering our territorial waters from abroad, *United States v. Prince*, 491 F.2d 655 (5th Cir. 1974), or the airport where an international flight lands, *United States v. Klein*, 592 F.2d 909 (5th Cir. 1979).

While the mere fact that a person or thing has once crossed the border does not sanction a search of it forever after, we have also recognized that the need to protect personality and property against warrantless invasion must be balanced against the myriad difficulties facing customs and immigration officials who are charged with the enforcement of smuggling and immigration laws. We have, therefore, recognized in the doctrine of "extended border search," the government's power, under certain circumstances, to search without a warrant persons and things after they have entered the country.[3]

Various panels of this court have described the requisites for a warrantless extended border search in terms that are not reconcilable. At its most permissive, the standard

has been phrased as requiring only a "reasonable suspicion of a customs agent" if the search occurs in the "border area." *See, e. g., United States v. Hill*, 430 F.2d 129, 130–31 (5th Cir. 1970). We have also phrased the standard as requiring either "direct contact" or "nexus" with the border area coupled with a reasonable suspicion of secreted contraband. *See, e. g., United States v. Salinas*, 439 F.2d 376, 379 (5th Cir. 1971); *United States v. Bowman*, 502 F.2d 1215, 1219 (5th Cir. 1974).

On several occasions, however, this court has exacted stricter criteria and has required the government to show both a likelihood that the person or thing has crossed the border and reasonable certainty that any contraband discovered by the search was present when the border was crossed. *See, e. g., United States v. Fogelman*, 586 F.2d 337 (5th Cir. 1978); *United States v. Martinez*, 481 F.2d 214 (5th Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974). Because the primary justification for the relaxation of fourth amendment standards in these situations is the crossing of a border, these constraints are warranted and the less exacting standards of *Hill, Salinas*, and *Bowman* have been criticized. *See, e. g.*, Note, From Bags to Body Cavities: The Law of Border Search, 74 Colum.L.Rev. 53, 60–61 (1974); 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment 298 (1978).

■ In *United States v. Johnson*, 588 F.2d 147 (5th Cir. 1979), this court rejected

---

**2.** *See* Barnett, A Report on Search and Seizure at the Border, 1 Am.Crim.L.Q. 36 (1963); 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment 276 (1978). *See also* 19 U.S.C. § 1582; 19 C.F.R. § 145.2 ("All mail arriving from outside the Customs territory of the United States which is to be delivered within the Customs territory of the United States ... is subject to customs examination"). *Cf.* 19 C.F.R. § 145.3 (sealed letter-class mail is authorized to be opened without a warrant only if the customs officials have reasonable cause to suspect the presence of merchandise other than correspondence).

**3.** *See, e. g., United States v. Kenney*, 601 F.2d 211 (5th Cir. 1979). *United States v. Walters*, 591 F.2d 1195 (5th Cir.), *cert. denied*, 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 317 (1979); *United States v. Johnson*, 588 F.2d 147 (5th Cir. 1979); *United States v. Fogelman*, 586 F.2d 337 (5th Cir. 1978); *United States v. Ivey*, 546 F.2d 139 (5th Cir. 1977), *cert. denied*, 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977); *United States v. Brom*, 542 F.2d 281 (5th Cir. 1976); *United States v. Brennan*, 538 F.2d 711 (5th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977); *United States v. Bowman*, 502 F.2d 1215 (5th Cir. 1974); *United States v. Steinkoening*, 487 F.2d 225 (5th Cir. 1973); *United States v. Martinez*, 481 F.2d 214 (5th Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974); *United States v. Salinas*, 439 F.2d 376 (5th Cir. 1971); *United States v. Hill*, 430 F.2d 129 (5th Cir. 1970).

the bare requirement of "border nexus" as being inconsistent with the decision of the Supreme Court in *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), and held that "[a] search is not a valid border search unless it appears by a preponderance of the evidence, direct or circumstantial, that a border crossing has occurred." *United States v. Johnson*, 588 F.2d at 154 (footnote omitted).

The government must also be able to show, with reasonable certainty, that conditions remained unchanged from the time of the border crossing until the subsequent warrantless search. *United States v. Fogelman*, 586 F.2d 337, 343 (5th Cir. 1978); *Cf. United States v. Walters*, 591 F.2d 1195, 1198 (5th Cir. 1979) (extended border search doctrine, requiring unchanged conditions, applied to strip search). In other words, it must be established with reasonable certainty that, when searched, the person or thing was in the same condition as when the border was crossed. This requirement is usually met by proving either that the object searched was subject to constant surveillance from the time it crossed the border or that, under the circumstances, the contraband was not likely to have been introduced during any breaks in the surveillance. *See, e. g., United States v. Martinez*, 481 F.2d 214, 218–19 (5th Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974) (35 minute break in surveillance held insufficient to establish changed circumstances in view of the fact that it took the authorities two hours to unload the 628 pounds of marijuana hidden in a secret compartment of a truck). Finally, before conducting a warrantless extended border search, the government agents must possess a reasonable suspicion, supported by articulable facts, that the person or thing searched is involved in illegal activity, such as smuggling contraband.[4] *United States v. Kenney*, 601 F.2d 211, 213 (5th Cir. 1979); *United States v. Martinez*, 481 F.2d 214, 219 (5th Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974).

There appears to be no sound reason to distinguish between incoming mail and other property that crosses our border. Affixing a postage stamp to a parcel should not grant it immunity that would not be accorded a package carried by a traveller.[5] In *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977), the Supreme Court held that a search by custom officials of incoming international letter-class mail without a warrant was constitutionally permissible. While the Court reserved the question of the validity of such a search if conducted at a point distant from the border, 431 U.S. at 615 n.11, 97 S.Ct. at 1978, n.11, 52 L.Ed.2d at 626 n.11, it rejected the argument that mail should be treated differently from and receive more constitutional protection than incoming persons or vehicles: "It is clear that there is nothing in the rationale behind the border-search exception which suggests that the mode of entry will be critical." 431 U.S. at

---

4. This additional requirement, which is more than is required of a search conducted at the actual border, is exacted because extended border searches usually occur after an initial, routine search and, unlike those routine searches, may stigmatize the individual searched, are unexpected and involve a greater invasion of privacy.

5. *See also Von Cotzhausen v. Nazro*, 107 U.S. 215, 2 S.Ct. 503, 27 L.Ed. 540 (1883). In *Von Cotzhausen* the Supreme Court upheld a warrantless seizure of a woolen scarf by a customs collector. Although the Court did not discuss the affect that the fourth amendment had upon the seizure, it did note carefully the adverse implications of distinguishing between mail and other modes of ingress:

> Of what avail would it be that every passenger, citizen and foreigner, without distinction of country or sex, is compelled to sign a declaration before landing, either that his trunks and satchels in hand contain nothing liable to duty, or, if they do, to state what it is, and even the person may be subjected to a rigid examination, if the mail is to be left unwatched, and all its sealed contents, *even after delivery to the person to whom addressed*, are to be exempt from seizure, though laces, jewels, and other dutiable matter of great value may thus be introduced from foreign countries.

> *Id.* at 218, 2 S.Ct. at 505 (emphasis added).

620, 97 S.Ct. at 1980, 52 L.Ed.2d at 629. "The critical fact is that the envelopes cross the border and enter this country, not that they are brought in by some mode of transportation rather than another. It is their entry into this country from without it that makes a resulting search 'reasonable.'" 431 U.S. at 620, 97 S.Ct. at 1980–81, 52 L.Ed.2d at 629. The Court found no historical or constitutional reason for treating mail differently from persons or vehicles entering the country. *See also United States v. King*, 517 F.2d 350 (5th Cir. 1975), *cert. denied sub nom. Pearson v. United States*, 446 U.S. 966, 100 S.Ct. 2943, 64 L.Ed.2d 825 (1980) (approving a search of mail that was made prior to delivery to the addressee at an inland post office).

Extending the doctrine of *Ramsey* and *King*, we see no reason to prohibit an extended border search of international mail under the same conditions that would properly permit one to be made of persons or other property that has crossed the border. *See also United States v. Pringle*, 576 F.2d 1114, 1117 (5th Cir. 1978). There is no more reason to draw a bright line at the moment mail is delivered than there is to draw it after the incoming parcel crosses the border.

■ Thus, we apply this circuit's extended border search doctrine to searches of mail and conclude that such a warrantless search is reasonable (a) when it is established by a preponderance of the evidence that the mail has crossed the border; (b) when it appears with reasonable certainty that the mail's contents have not been altered since it entered the United States

and, (c) if the search occurs after delivery of the mail to the addressee, when the government agents who made the search had a reasonable suspicion of smuggling activity. While these requisites have not been exacted in every Fifth Circuit extended-border-search decision, and while, even in those of our decisions requiring them, each has not been separately set forth with this specificity, each of them has been implicitly or explicitly demanded in many of our prior decisions. Thus summarized, they are distillate of a variety of decisions. Each of them has been satisfied here.[6]

■ The search was conducted with respect to a package that had undeniably crossed our international border and remained unchanged subsequent to that crossing. In addition, although reasonable suspicion is ordinarily sufficient to warrant such inland searches, even of mail, the government officials were certain that contraband was being smuggled in the package. Therefore, all the criteria that sanction warrantless border searches are met and we hold that the search was not unreasonable.[7]

Accordingly, the judgment of the district court is AFFIRMED.

GEE, Circuit Judge, concurring:

In my view there are at least two, and probably three, reasons why this "search" was valid. The first is well stated in Judge Rubin's opinion, in which I concur.

The second is that where, as here, an undisputedly valid initial search has established the presence of contraband in a container and the container remains under un-

6. We note that in a similar fact situation the California Court of Appeal held that a warrant was required before the police could search, after delivery to the addressee, two packages that had been mailed from abroad. *People v. Riegler*, 111 Cal.App.3d 580, 168 Cal.Rptr. 816 (5th Dist. 1980). As a result of an earlier customs search, the packages were known to contain cocaine. The court rejected the arguments that the defendant had a decreased expectation of privacy in the packages because of the customs search and that the authorities were entitled to search the packages because the contents were known. Relying on another

California decision, *People v. Whyte*, 90 Cal. App.3d 235, 152 Cal.Rptr. 280 (1979), the court reasoned that the act of delivery terminated the government's power to search the package without a warrant. The court did not, however, analyze the search under the extended border search doctrine that we adopt here.

7. This decision, of course, does not sanction searching mail that has been delivered to the addressee and taken into his private possession beyond the scrutiny of government officials, with the concomitant possibility that the contents of the package had been altered.

interrupted supervision and surveillance until delivery, a second opening of the container after delivery does not seem to me a search at all. What was in this package at the time Richards was apprehended with it was not suspected, was not believed with probable cause, but rather was *known*. The wrappings around it had no effect whatever to impeach that knowledge; in the circumstances of this case, they might as well have been absent or have been stamped "Grade A Indochinese Heroin." Where certain knowledge is present, as in the well-recognized "plain view" exception, I think it exalts form over substance to follow a *Chadwick*[1] analysis. Such an analysis is appropriate where probable cause is in play and where something remains to be discovered. Here it is true that the exact amount of heroin present was not known, but what was known was enough: that Richards stood before the agents holding contraband, and holding heroin at that—a substance illegal for private citizens to possess at any time and in any amount.

Finally, and to whatever extent it may be distinct from the second reason given above, I believe that where an initial intrusion into a container has taken place—one not prohibited by the fourth amendment—and has disclosed the presence in it of contraband, and where the container remains under surveillance, a second intrusion made by government agents who know the results of the initial search is not proscribed by the fourth amendment. *United States v. McDaniel*, 574 F.2d 1224 (5th Cir. 1978); *United States v. Blanton*, 479 F.2d 327 (5th Cir. 1973) (both involving initial inspections by airline attendants seeking to discern the ownership of misrouted or unclaimed luggage).[2]

For all of the above reasons, I join in affirming the judgment of the court below.

**1.** *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

**2.** I recognize that the reasoning of these cases may be somewhat cast in doubt by *Walter* and *Sanders v. U. S.*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); however, that result is unclear because of the want of a majority opinion and the reliance of Justice Stevens' plurali-

GODBOLD, Chief Judge, dissenting:

The decision of the court is a narrow one: foreign mail that has been delivered to an addressee within the United States may be seized, opened and searched without a warrant, provided: (a) there is a reasonable suspicion, supported by articulable facts, that the item searched contains contraband;[1] (b) it is established with reasonable certainty that, when searched, the mail was in the same condition as when the border was crossed. Under the court's analysis, requirement (b) can be established by proof either that the mail was subject to constant surveillance from the time it crossed the border, or that under the circumstances no new contents were likely to have been introduced into the package during any breaks in the surveillance. The rationale for the majority view is "extended border search." No functional equivalent of the border is involved.

I do not differ with respect to requirement (b). Nor do I differ with requirement (a) as applicable to mail that has not been delivered to the addressee. But I would draw a bright, sharp line between mail that remains undelivered in the hands of or under the control of the mail service and mail that has been delivered to the addressee. For sealed mail that has been delivered I would require the usual probable cause and exigent circumstances to support a warrantless search. Sealed mail has several qualities that cause me to reach this decision.

First, the essentially private nature of mail is indisputable. We entrust important, confidential and intimate matters to our letters, and we ship gifts and other personal items in parcels, with the confidence that contents are private. Each of us is offend-

ty view on the screening of the obscene films, an additional step taken by the government agents that has no analogue in the circumstances of this case.

**1.** The opinion by Judge Rubin, note 4, recognizes that this is a more stringent standard than required for a search of mail at the actual border.

ed at the affrontery of any one who without permission opens our letters or our parcels. Almost every family of even minimal sophistication has been through the experience of teaching its children that mail, like a diary, is personal and intimate, not to be tampered with or scrutinized without authorization.

Second, the package that was seized and later searched was sealed and the contents hidden from public view. As the court stated in *U. S. v. Chadwick*:

> By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause.

433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538, 548 (1977). *See also Katz v. U. S.*, 389 U.S. 347, 352, 88 S.Ct. 507, 511–512, 19 L.Ed.2d 576, 582 (1967). The objective evidence shows that Richards sought to preserve his privacy in the package and took normal precautions to prevent its exposure to the public.

Third, sealed items in the mail historically have been considered to have a high degree of privacy, and government intrusion into such parcels has been perceived to be objectionable under the Fourth Amendment. *See U. S. v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1049, 25 L.Ed.2d 282 (1970); *Ex parte Jackson*, 96 U.S. 727, 24 L.Ed. 877 (1878). In short, Richards' expectation of privacy was legitimate in part because of the protection of mail under the Fourth Amendment. *Cf. Chadwick*, 433 U.S. at 7–11, 97 S.Ct. at 2481–2483, 53 L.Ed.2d at 545–48 (historical analysis of scope of Fourth Amendment).

Fourth, Richards was in lawful possession of the package. As Judge Rubin points out, the "arcane distinctions" of property law are not controlling but they are to be considered in determining whether expectations of privacy are reasonable. It seems to me that it is more of an affront to the citizen for the government to first seize from his possession an item essentially private with the purpose of searching it, and then to search it, than it is to search an item which without the necessity of seizure is in the rightful possession of the government and has never come into the citizen's possession.[2]

In general, mail crossing the international boundary is subject to border search the same as items entering by other modes of travel. *U. S. v. Ramsey*, 431 U.S. 606, 620, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617, 629 (1977). Incoming international mail may be searched in the interior of the country while it remains undelivered in the possession of the Postal Service. *U. S. v. King*, 517 F.2d 350, 354 (5th Cir. 1975); *U. S. v. Davis*, 461 F.2d 83, 89 (5th Cir.), *cert. denied* 409 U.S. 921, 93 S.Ct. 250, 34 L.Ed.2d 180 (1972) (under theft of mail statute authority of Postal Service over mail ends with delivery to proper addressee). The issue in *King* was whether a foreign letter received at San Francisco, not inspected, and routed to Birmingham, Alabama, could be opened for inspection without a warrant while still in possession of the mail service. We held that it could. The rationale was three-fold. First, since all incoming international mail is potentially subject to search there is no reasonable expectation of privacy. Second, a search of mail that is in the possession of the Postal Service and has not been delivered takes place without knowledge of or inconvenience to the addressee. Third, search of mail prior to delivery is far less intrusive than searches of individuals or their immediate effects. None of these fac-

2. The double impact of seizure followed by search is demonstrated by cases like *Chadwick*, where it was permissible to invade privacy by a warrantless seizure but not by a warrantless search of the seized item. The argument that a valid seizure subsumes a right to search was rejected in *Chadwick*. In this case a seizure might have been justified on the ground of probable cause plus exigent circumstances but when one applies *Chadwick* the subsequent search of the sealed item is not justifiable. Faced with this situation, the government and the majority find their way to safe harbor by using "extended border search."

tors applies to mail that has reached the hands of the addressee.

The first *King* factor, the diminution in expectation of privacy by reason of the government's power to search, does not rest upon any change in the confidential and private nature of mail but in its exposure to a governmental power to inspect. The governmental power exists at the border and continues until delivery. But once mail is delivered to the addressee he is entitled to enjoy the expectation of privacy, free from governmental power to inspect, that inures from the nature of mail that has been placed in the hands of the person entitled to receive and retain it. There is no general authority to make a warrantless search of sealed mail that is in the interior of the country and is in the hands of the addressee. It is specious to find such authority on the basis of the government's right to search mail that has never left its hands.

Looking to the second and third rationales of *King*, a search after delivery usually will occur with knowledge of and inconvenience to the addressee and in most cases will be more intrusive than a search prior to delivery and may be at a point distant from the place of delivery.[3] Allowing a search of mail after delivery to be justified as a border search greatly increases the potential for interfering with the rights of persons lawfully in the country. *See Carroll v. U. S.*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). As we have stated recently,

> Instead of drawing formalistic rules based on how long or how far a person has penetrated into the country, we will continue to determine whether a search is at the border based on whether the rationale for border searches is vindicated without impinging the rights of persons "lawfully within the country . . ."

*U. S. v. Walters*, 591 F.2d 1195, 1198 (5th Cir.) (quoting *Carroll*), *cert. denied*, 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 317 (1979).

**3.** This case might well have come out differently if the interval between delivery and seizure had not been so transitory. It is the brevity of

The interests that the government seeks to vindicate in this case can be protected by less stringent procedures than the majority permit. Since the government can control time and place of delivery, it can secure a warrant to be served when delivery occurs. If this is not possible it may seize based upon probable cause and the exigency of the addressee's taking the item away, and then comply with *Chadwick*.

I respectfully dissent.

this time interval that causes this to be a hard case that makes bad law.