529 S.E.2d 799

**Dennis M. WILLIAMS, s/k/a Dennis Muhammed Williams**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1038–99–3.**

Court of Appeals of Virginia,
Richmond.

June 13, 2000.

Mark T. Williams (Williams, Morrison, Light and Moreau, on brief), Danville, for appellant.

Richard B. Smith, Senior Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON and WILLIS, JJ., and COLE, Senior Judge.

BENTON, Judge.

A jury convicted Dennis M. Williams of possession of more than five pounds of marijuana with intent to distribute. Williams contends the trial judge erred in denying his pretrial motion to suppress on Fourth Amendment grounds. Williams also contends the judge erred in refusing to allow his attorney to change his plea from not guilty to guilty after Williams failed to return to his trial following the lunch recess. For the reasons that follow, we hold that the trial judge erred in ruling that Williams lacked standing to challenge the search. Accordingly, we reverse the conviction and remand for a new hearing.

## I.

A grand jury indicted Williams for possession of more than five pounds of marijuana with the intent to distribute. Prior to trial, Williams filed a motion to suppress the evidence obtained from a search of mail. The Commonwealth contended that the mail was addressed to a fictitious person and, therefore, Williams lacked standing to challenge the search.

At the evidentiary hearing on the motion, Kevin Boyle, a United States Postal Inspector, testified that every day he "physically look[ed] at [Express] Mail packages" in transit through the Roanoke post office to determine whether any packages meet a "national drug profile." On August 7, 1996, he saw a package which he felt merited further inspection and took it to his office. The package was addressed to "Paul Smith" at 2711 McCain Drive.

Boyle testified that he targeted the package because it was sent from Long Beach, California, which Boyle knew to be a "drug area" and because the post office from which the package had been mailed was in a different place than the return address. Boyle testified the package emitted a "marijuana smell"; however, he admitted that he did not include that fact either in the later search warrant affidavit or in his testimony at the preliminary hearing. After making inquiries in Roanoke and California for forty-five minutes, Boyle took the package to a Roanoke police station, where a police dog's sniff of the package indicated that it contained drugs. Boyle then obtained a search warrant, opened the package, and found marijuana. He then repackaged the substance and returned it to the post office.

After conferring with the Postmaster, Boyle learned that the residents at 2711 McCain Drive were named Farmer and "that Paul Smith did not receive mail at that address." When a postal employee telephoned the residence, a woman said she would tell "Paul Smith that the package had arrived." After the post office received several calls concerning the package, Boyle saw two men arrive at the post office in a car. Boyle

had instructed the postal employee to give the package to anyone who signed for it.

Corey Farmer, a codefendant, entered the post office, signed his name, and accepted the package. When Farmer attempted to leave the post office, Boyle detained him. Williams, who remained in the car while Farmer went into the post office to get the package, was detained in the parking lot.

The police took Williams and Farmer to a local jail and interrogated them. Farmer confessed that he was instructed by Williams to get the package and that he was to be paid for his services. Williams confessed that he had arranged for the package to be sent to him under the fictitious name, "Paul Smith." He also admitted he had called the post office on several occasions, saying he was Paul Smith, to check on the package. He said he promised Farmer a part of the marijuana for his services.

## II.

■ Williams argues that the trial judge erred in determining that he lacked standing to challenge the postal inspector's seizure of the package. We agree.

■ "[T]he [Supreme] Court in *Katz [v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967),] held that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded [thing] but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded [thing]." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (citation omitted). Moreover, the principle is well established that individuals retain an expectation of privacy in letters and sealed packages that have been deposited in the mail. *See United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 1656–57, 80 L.Ed.2d 85 (1984); *United States v. Van Leeuwen*, 399 U.S. 249, 251, 90 S.Ct. 1029, 1031–32, 25 L.Ed.2d 282 (1970). Proof that a package was addressed to a fictitious person does not negate the actual owner's standing to raise suppression issues.

*See United States v. Richards,* 638 F.2d 765, 770 (5th Cir. 1981). Indeed, "individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names." *United States v. Villarreal,* 963 F.2d 770, 774 (5th Cir.1992). Thus, if the evidence proved that the sealed package was addressed to a fictitious person, who was, "in effect, [the accused,] ... [t]hese facts alone indicate 'an expectation that the contents would remain free from public examination.'" *Richards,* 638 F.2d at 770 (citation omitted); *see also Walter v. United States,* 447 U.S. 649, 654, 100 S.Ct. 2395, 2400, 65 L.Ed.2d 410 (1980).

Williams confessed that he arranged for the package to be sent to him under the name Paul Smith and at Farmer's address. When the package did not timely arrive, Williams called the post office and used the name Paul Smith to check on the status of the package. Clearly, the evidence proved Williams had a possessory interest in the package and expected the package to remain free from intrusion.

When the package arrived, Farmer and Williams went together to retrieve the package. After Farmer retrieved the package and was arrested, Farmer told Boyle "[t]hat he was instructed by ... Williams to pick up the package." He also told the inspector "that he overheard ... Williams call the post office several times inquiring about this package ... [and] that he was going to receive $50.00 to $100.00 for signing for this package for ... Williams."

This examination of the totality of the circumstances, *see McCoy v. Commonwealth,* 2 Va.App. 309, 311, 343 S.E.2d 383, 384 (1986), proves that Williams had standing to assert his claim of an expectation of privacy in the package and to assert a Fourth Amendment challenge to the search and seizure. Therefore, the trial judge erred in denying Williams' motion to suppress on the ground that Williams did not have standing. Because the resolution of the merits of the motion requires factual determinations, we reverse the conviction and remand for rehearing.

### III.

At the commencement of trial, Williams personally entered a plea of not guilty. Williams was present the morning his trial began but failed to return to court after the luncheon recess. When Williams failed to return, his attorney moved to change Williams' not guilty plea to a guilty plea. The trial judge refused to allow Williams' attorney to change the plea. Williams argues that the trial judge erred in denying his attorney's motion to change his not guilty plea to one of guilty.

A guilty plea must be made voluntarily and intelligently. Because "[a] guilty plea is a waiver of constitutional rights ... the waiver is to be accepted only after the trial judge has made a determination that it is [a voluntary, knowing, and intelligent act]." *Gardner v. Warden of Virginia State Penitentiary*, 222 Va. 491, 494, 281 S.E.2d 876, 878 (1981). This means that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) (citation omitted).

"Rule 3A:8 is consistent with the Virginia Constitution and places no limitation on [an accused's] right to plead guilty, other than the constitutional requirement that it be made voluntarily, knowingly and intelligently." *Graham v. Commonwealth*, 11 Va.App. 133, 139, 397 S.E.2d 270, 273 (1990). "No statute permits the trial [judge] to enter a guilty plea for [an accused] without the [accused's] voluntary consent and full understanding of the ramifications of his or her plea." *Mason v. Commonwealth*, 14 Va.App. 609, 613, 419 S.E.2d 856, 859 (1992). Indeed, by statute a guilty plea must be "tendered in person by the accused." Code § 19.2–257. "In the absence of such [an affirmative] showing, the trial [judge] may, and is in fact required, to reject the plea." *Graham*, 11 Va.App. at 139, 397 S.E.2d at 274.

Although Williams' attorneys told the trial judge that, at the end of the evidence, Williams had *intended* to plead guilty, that representation is insufficient to prove that the plea was voluntary or that Williams still wanted to change his plea. Without Williams' presence, the trial judge could not determine that Williams' plea was entered voluntarily and with full understanding of the ramifications involved. Thus, in view of Code § 19.2–257 and the existing circumstances, the trial judge properly concluded that Williams' attorneys could not change Williams' not guilty plea to a guilty plea in his absence.

For the foregoing reasons, we reverse the conviction and remand for rehearing.

*Reversed and remanded.*